UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE ROGERS,<br><br>                    Plaintiff,<br><br>    v.<br><br>G.J. GIURBINO, et al.,<br><br>                    Defendants. | Civil No. 11cv560 IEG(RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY [ECF NO. 42], ORDER DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF INVESTIGATOR [ECF NO. 58], AND REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [ECF NO. 44]** |

     Plaintiff Tyrone Rogers, a state prisoner proceeding pro se and in forma pauperis, initiated this action with a Complaint filed pursuant to 42 U.S.C. § 1983 [ECF Nos. 1-2].  After the Complaint and First Amended Complaint were dismissed for failing to state a claim [ECF Nos. 4, 5, 7], Rogers filed a Second Amended Complaint [ECF No. 8].  Plaintiff's only surviving cause of action is against Defendant Kuzil-Ruan for violating the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") [ECF Nos. 8-9, 18, 33].  In his Second Amended Complaint, the operative pleading, Plaintiff contends that Captain Kuzil-Ruan violated RLUIPA when she locked down the "B-Yard" on three separate occasions, preventing

Rogers from exercising religious practices mandated by his faith. (See generally Second Am. Compl. 3-5, 8, ECF No. 8.)[1]  On February 27, 2012, Defendant P. Kuzil-Ruan's Answer to Plaintiff's Second Amended Complaint was filed [ECF No. 34].

Before the Court is Plaintiff's "Ex Parte Motion to Compel Discovery on Defendant's Non Compliance to This Court's Order to Plaintiff's Request for Interrogatories and Production of Documents with Points and Authorities," which was filed on April 5, 2012 [ECF No. 42].  In his Motion to Compel, Rogers seeks further responses from Kuzil-Ruan to his requests for production of documents and interrogatories. (Ex Parte Mot. Compel Disc. 1-3, ECF No. 42.)[2] On April 30, 2012, Defendant Kuzil-Ruan filed an Opposition to Plaintiff's Motion to Compel, along with attachments [ECF No. 48]. In addition to substantive objections, Defendant claims that the Motion should be denied because Rogers failed to satisfy the meet and confer requirement prior to filing the Motion. (Def.'s Opp'n Mot. Compel 3-4, ECF No. 48.)  Also, Kuzil-Ruan asserts she sufficiently supplemented her responses to Plaintiff's requests for production of documents and interrogatories. (Id.)  Plaintiff filed a Reply on May 9, 2012, with exhibits [ECF No. 50].  In his Reply, Rogers claims that Defendant's supplemental responses were inadequate, but Plaintiff also argues that the documents produced

---

[1]  Because the Second Amended Complaint is not consecutively paginated, the Court will cite to it using the page numbers assigned by the electronic case filing system ("ECF").

[2]  Many of the filings and attachments related to Rogers's motions are not consecutively paginated. Therefore, the Court will cite to Plaintiff's Motion to Compel, Defendant's Opposition, and Rogers's Reply using the ECF pagination.  The Court will also cite to the Motion for Default Judgment and Motion for Appointment of Investigator using the pages numbers assigned by ECF.

were excessive, and that Kuzil-Ruan also failed to make attempts to meet and confer.  (Pl.'s Reply 1, ECF No. 50.)

Next, "Plaintiff's Motion for Appointment of Investigator Under Rule 26" was filed nunc pro tunc to June 18, 2012 [ECF No. 58].  Rogers asks the Court to appoint an investigator to assist him in obtaining information that is reasonably calculated to lead to new, admissible evidence.  (Pl.'s Mot. Appointment Investigator 4, ECF No. 58.)  Kuzil-Ruan has not filed an opposition.

Finally, Rogers's Ex Parte Motion for Default Judgment was filed nunc pro tunc to March 19, 2012 [ECF No. 44].  He urges the Court to enter a default judgment for Defendant's failure to adequately respond to Plaintiff's discovery requests.  (Pl.'s Mot. Default J. 1, 3, ECF No. 44.)  The Defendant has not filed an opposition.

The Court finds Rogers's Ex Parte Motion to Compel Discovery, Motion for Appointment of an Investigator, and Motion for Default Judgment suitable for resolution on the papers, pursuant to Civil Local Rule 7.1.  See S.D. Cal. Civ. R. 7.1(d)(1).  The Court has reviewed Rogers's three Motions and exhibits, Kuzil-Ruan's Opposition to the Motion to Compel and attachments, as well as Plaintiff's Reply, including the exhibits and attachments.  For the reasons stated below, Plaintiff's Ex Parte Motion to Compel Discovery is **GRANTED in part** and **DENIED in part**, his Motion for Appointment of an Investigator is **DENIED,** and his Motion for Default Judgment should be **DENIED.**

///

///

///

11cv560 IEG(RBB)

# I.

## FACTUAL BACKGROUND

The allegations in the Second Amended Complaint arise from events that occurred while Rogers was housed at Centinela State Prison. (Second Am. Compl. 1, ECF No. 8.) Plaintiff pleads that Captain Kuzil-Ruan violated RLUIPA when she locked down the "B-Yard" three times. (Id. at 3.) The first lockdown was from May 18-28, 2010, when Defendant declared a state of emergency because the "B-Yard medical staff . . . knowingly released scissors to the C-Yard MTA." (Id.) The second lockdown was from June 12-22, 2010, when a correctional officer "lost a single bullet." (Id.) The third lockdown occurred from August 13-24, 2010, because of a missing dental tool. (Id.) Rogers asserts that these lockdowns prevented him from engaging in practices mandated by his religion because he was unable to attend weekend fellowship, Saturday morning bible studies, and Sunday morning prayer services. (Id. at 4.) Plaintiff insists that Defendant did not impose the prison lockdowns to further a valid penological interest; rather, she implemented them to reduce costs because fewer correctional staff members were needed during the restrictions so lockdowns furthered the three to five percent reduction plan. (Id. at 4-5.)

# II.

## MOTION TO COMPEL DISCOVERY

### A.    Failure to Meet and Confer

In his Motion to Compel, Plaintiff notes that "counsel must meet and confer [on] all disputed issues." (Ex Parte Mot. Compel Disc. 2, ECF No. 42.) Defendant argues in her Opposition that Rogers's Motion to Compel should be denied because he failed to

meet and confer with defense counsel prior to bringing the Motion. (Def.'s Opp'n Mot. Compel 1, ECF No. 48.)  Kuzil-Ruan claims that if Plaintiff had appropriately conferred with defense counsel, she would not have had to answer irrelevant interrogatories and requests for production of documents bearing on the involvement of subsequently dismissed Defendants, as she is now the only remaining Defendant.  (Id. at 3-4.)  Additionally, the Defendant maintains that conferring would have resulted in the omission or modification of irrelevant discovery requests, and Kuzil-Ruan would have provided responses without court intervention.  (Id. at 4.)

In his Reply, Plaintiff concedes that he did not confer with defense counsel prior to filing this Motion to Compel, but he argues that his incarceration made it difficult for him to do so. (Reply 5, ECF No. 50.)  Rogers contends that Kuzil-Ruan admits that "Plaintiff is incarcerated and therefore cannot be easily contacted."  (Id. at 5-6.)  Plaintiff urges the Court to instruct the Defendant to arrange meet-and-confer sessions because Plaintiff is incarcerated and has limited opportunities to initiate communications with defense counsel.  (See id. at 6.)

Civil Local Rule 26.1 provides, "The court shall entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel shall have previously met and conferred concerning all disputed issues."  S.D. Cal. Civ. R. 26.1(a).  Counsel for the moving party must serve and file a certificate of compliance with this rule when filing a discovery motion.  S.D. Cal. Civ. R. 26.1(b).  Additionally, Federal Rule of Civil Procedure 37 provides that a motion to compel discovery responses "must include a certification that the movant has in good faith conferred or

attempted to confer with the person or party failing to make the disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).

Rules requiring meet-and-confer efforts apply to pro se litigants.  Madsen v. Risenhoover, No. C 09-5457 SBA (PR), 2012 U.S. Dist. LEXIS 90810, at *8-9 (N.D. Cal. June 28, 2012) (finding that the meet-and-confer requirement applies to incarcerated individuals, but noting that the incarcerated plaintiff may send a letter to defendants); Walker v. Ryan, No. CV-10-1408-PHX-JWS (LOA), 2012 U.S. Dist. LEXIS 63606, at *5-6 (D. Ariz. May 7, 2012) (denying motion to compel where unrepresented party did not include a certification of attempts to meet and confer); see Jourdan v. Jabe, 951 F.2d 108, 109 (6th Cir. 1991) (discussing that although courts should liberally construe pro se plaintiffs' pleadings and legal arguments, this liberality does not apply to compliance with straightforward procedural requirements).

A court can deny a motion to compel solely because of a party's failure to meet and confer prior to filing the motion. Scheinuck v. Sepulveda, No. C 09-0727 WHA (PR), 2010 U.S. Dist. LEXIS 136529, at *3-4 (N.D. Cal. Dec. 15, 2010); see Shaw v. Cnty. of San Diego, No. 06-CV-2680-IEG (POR), 2008 U.S. Dist. LEXIS 80508, at *3-4 (S.D. Cal. Oct. 9, 2008) (denying plaintiff's motion to compel for failing to attempt to meet and confer.)  Nonetheless, courts can still decide a motion on the merits despite a failure to meet and confer.  See Marine Group, LLC v. Marine Trvelift, Inc., No. 10cv846-BTM (KSC), 2012 U.S. Dist. LEXIS 49064, at *6-7 (S.D. Cal. Apr. 6, 2012) (explaining failure to meet and confer is grounds for denying a motion, but still addressing the merits).

Rogers failed to meet and confer with Kuzil-Ruan's attorney prior to filing this Ex Parte Motion to Compel Discovery. Even so, Rogers's incarcerated status frustrates his ability to meet and confer. See Kunkel v. Dill, No. 1:09-cv-00686-LJO-SKO PC, 2010 U.S. Dist. LEXIS 121754, at *8 (E.D. Cal. Nov. 2, 2010) (stating that counsel must make themselves reasonably available to the incarcerated party in person, via telephone, or via video conference for a meet and confer.) Although Rogers could have attempted to confer with counsel by telephone or mail, his failure to do so, without more, does not warrant an outright denial of his Motion to Compel. See Marine Group LLC, 2012 U.S. Dist. LEXIS 49064, at *7. For the purposes of this Motion, the Court will waive the meet and confer requirement. See S.D. Cal. Civ. R. 1.1(d). Nevertheless, additional motions will not be entertained absent certification by the moving party of compliance with the meet-and-confer requirement. See S.D. Cal. Civ. R. 26.1(a).

**B.    Requests for Production of Documents**

On November 17, 2011, Rogers served Defendant with requests for production of documents. (Pl.'s Reply Ex. 1, at 18, ECF No. 50.) Kuzil-Ruan served objections to the requests on December 20, 2011. (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 4, at 38, ECF No. 48.) On April 26, 2012, Defendant supplemented her responses to Rogers's document requests. (Id. at 3 (citing id. Attach. #1 Ex. 6, at 63).) Plaintiff argues that the documents produced are insufficient and seeks a further production in response to document requests 1, 5, 8, 9, and 10. (Pl.'s Reply 1-2, ECF No. 50.)

For all of his document requests, Plaintiff contends that the requests seek relevant, important information that he cannot obtain

elsewhere.  (Ex Parte Mot. Compel Disc. 2, ECF No. 42.)  According to Rogers, the requested discovery will also assist him in finding additional relevant information and witnesses.  (Id. at 3.)

In her Opposition, Captain Kuzil-Ruan asserts that she has provided a sufficient supplemental production to Rogers's discovery requests directed to her.  (Def.'s Opp'n Mot. Compel 4, ECF No. 48.)  Defendant maintains that she has produced "109 pages of documents," so Plaintiff's Motion to Compel is moot.  (Id.)  Kuzil-Ruan agreed to produce documents during the period that she was employed at Centinela; she agreed to produce, or was unable to locate, documents for all of Rogers's document requests except one. (Id.)

In his Reply, Rogers asserts that the 109 pages of documents produced by Defendant were duplicative and excessive.  (Reply 2, 6, ECF No. 50.)  He pleads that Civil Local Rule 83.4(a)(2)(g) prevents attorneys from engaging in "excessive, abusive discovery, or delaying tactics."  (See id. at 6 (citing S.D. Cal. Civ. R. 83.4(a)(2)(g)).)  Because the Defendant's production was incomplete, Plaintiff argues that his Motion to Compel should be granted.  (Id.)

**1.   Document requests 1 and 10**

In request 1, Rogers "request[s] a copy of all Memorandums dated Feb. 2010 thru June 2011 concerning rolling lockdowns and 10 day lock-downs."  (Pl.'s Reply Ex. 2, at 21, ECF No. 50.)  In document request 10, Plaintiff "requests a copy of all actual 10 day lockdown and actual one day lockdown dates documentations [sic] that occurred on the B-Yard."  (Id. at 22.)  Defendant objects that both document requests because they seek information that is

protected by the attorney-client privilege and the work product
doctrine.  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 6, at 56, 61-
62, ECF No. 48.)  Kuzil-Ruan also objects that the requests are
overbroad, unduly burdensome, and irrelevant; further, they
improperly seek material regarding institutional safety, security,
and official information.  (Id.)

    With respect to document request 1, Defendant further
responded, "Subject to these objections, Defendant will produce
memorandums from February 2010 through June 2010, when Defendant
left Centinela State Prison." (Id. Attach. #1 Ex. 6, at 56.)  The
Defendant also produced five memoranda, four of which addressed the
three and five percent reduction plan and one addressed the lost
munition lockdown.  (Id. at 3, 54, 56, 60, 89.)  Rogers claims, in
his Reply, that Kuzil-Ruan failed to produce documents from
February 2010 to June 2011 relating to "rolling lockdowns" and ten-
day lockdowns.  (Reply 2, 6, ECF No. 50.)

    Kuzil-Ruan asserts a multitude of formulaic objections.  It is
well established that a party may obtain discovery regarding any
nonprivileged matter that is relevant to any claim or defense.
Fed. R. Civ. P. 26(b)(1).  Relevant information need not be
ultimately admissible at trial so long as the discovery appears to
be reasonably calculated to lead to the discovery of admissible
evidence.  Id.  Relevance is construed broadly to include any
matter that bears on, or reasonably could lead to other matter that
could bear on, any issue that may be in the case.  See Oppenheimer
Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978) (footnote
omitted) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)
(discussing relevance to a claim or defense, although decided under

1978 version of Rule 26 that authorized discovery relevant to the
subject matter of the action)).  Rule 37 of the Federal Rules of
Civil Procedure enables the propounding party to bring a motion to
compel responses to discovery.  Fed. R. Civ. P. 37(a)(3)(B).  The
party opposing discovery bears the burden of resisting disclosure.
Miller v. Pancucci, 141 F.R.D. 292, 299 (C.D. Cal. 1992).

The memoranda Rogers seeks in document request 1 are for a
period of time greater than the term of Defendant's employment at
Centinela.  Documents from June 2010 to June 2011 are not relevant
to Plaintiff's claim that Kuzil-Ruan prevented Rogers from
practicing his religion because of prison lockdowns imposed merely
to save institutional costs.  Because the Defendant left Centinela
in June 2010, memoranda related to rolling and ten-day lockdowns
dated after this time are not relevant to the elements of Rogers's
claim.  See Fleming v. Las Vegas Metro. Police Dep't, No. 2:11-cv-
00131-MMD-VCF, 2012 U.S. Dist. LEXIS 83193, at *9 (D. Nev. June 15,
2012) (explaining that documents not known to defendant prior to
the incident were not relevant to plaintiff's due care claim).
There is no indication that Kuzil-Ruan had control over the
implementation of the rolling and ten-day lockdowns at a prison at
which she was no longer employed.  This observation, however, does
not end the inquiry.

In her Answer to Plaintiff's Second Amended Complaint, as
Defendant's eleventh affirmative defense, Kuzil-Ruan alleges that
her "actions were reasonably related to advancing legitimate
penological goals."  (Answer 4, ECF No. 34.)  The twenty-fifth
affirmative defense is that "[t]he actions of Defendant were
reasonable and proper based upon the circumstances or exigent

circumstances that existed at the time." (Id. at 6.)  Her twenty-eighth affirmative defense is that "[i]n enacting a policy or choosing a course of action, Defendant employed the least restrictive alternative available." (Id. at 7.)

The Defendant's affirmative defenses are sufficient to expand the scope of discovery beyond Kuzil-Ruan's date of departure.  An analysis of other lockdowns sheds light on the reasonableness of her conduct and whether less restrictive alternatives were available.  Consequently, Plaintiff's Motion to Compel further responses to document request 1 for the period from February 2010 through June 2011 memoranda is **GRANTED.**

As to document request 10, Kuzil-Ruan did not state that she would produce responsive documents, but merely asserted objections. (See Def.'s Opp'n Mot. Compel Attach. #1 Ex. 6, at 61-62, ECF No. 48.)  Although the request does not identify a relevant time period, in his Reply, Plaintiff generally maintains that Defendant did not provide all relevant memoranda from February 2010 to June 2011.  (Reply 4, ECF No. 50.)  A review of Defendant's production reveals that she provided Rogers with the following documents relating to the dates of the ten-day and one-day lockdowns on the B-Yard:  eighty-one "Program Status Report Part B - Plan of Operation/Staff & Inmate Notification" forms, eight "Program Status Report Part C - Weekly Status/Closure" forms, and four "Program Status Report Part A - Initial Notification" forms.  (See generally Reply Ex. 6; Attach. #1 Ex. 6, ECF No. 50.)  Each of these documents contains the date the form was filled out, the date the action was taken, whether the lockdown affected religious services, and when religious services would return to normal.  (See id.)

11

Still, Kuzil-Ruan asserts a host of boilerplate objections, which the Court will address in turn.

### a.   Attorney-client privilege and work product

For some reason, the Defendant asserts objections based on the attorney-client privilege and work product doctrine.  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 6, at 61, ECF No. 48.)  But the Defendant's privilege and work product objections do not provide sufficient substance for the Court to determine whether they are valid.

When claiming a privilege or work product objection, a party must adequately describe the withheld material without revealing privileged or protected information to allow the propounding party to assess the objection.  Fed. R. Civ. P. 26(b)(5)(A)(ii).  Merely providing a boilerplate assertion of privilege is insufficient.  Burlington N. & Santa Fe Ry. v. U.S. Dist. Court, 408 F.3d 1142, 1147 (9th Cir. 2005).  Generally, the privilege protects confidential communications between an attorney and a client when made for the purpose of obtaining legal advice.  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); see United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (quoting United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010)).

The work product doctrine protects documents and tangible things from discovery if they were prepared by a party or his attorney in anticipation of litigation.  Fed. R. Civ. P. 26(b)(3)(A).  "To qualify for work product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or for that other party's representative.'"  Richey, 632 F.3d at 567 (quoting In re

<u>Grand Jury Subpoena</u>, 357 F.3d 900, 907 (9th Cir. 2004)).  A party must identify which documents were prepared in anticipation of litigation.  <u>United States v. Chevron Texaco Corp.</u>, 241 F. Supp. 2d 1065, 1080-84 (N.D. Cal. 2002).

Although Defendant Kuzil-Ruan makes both objections in response to document request 10, she provides nothing more than a blanket assertion.  It is unclear what "B-Yard" lockdown documents qualify as attorney-client communications or attorney work product, or how a particular document comes within either description.  <u>See United States v. Martin</u>, 278 F.3d 988, 1000 (9th Cir. 2002) (explaining that to assert the attorney-client privilege, a party must "identify specific communications and the grounds . . . as to each piece of evidence over which privilege is asserted[]"); <u>see Marti v. Baires</u>, No. 1:08-cv-00653-AWI-SKO PC, 2012 U.S. Dist. LEXIS 77962, at *16-17 (E.D. Cal. June 5, 2012) (overruling defendant's work product doctrine objection because the assertion was unsupported).  Similarly, these boilerplate objections are overruled.

### b.   Institutional safety and security

The Defendant also objects to document request 10 because it seeks information that will compromise prison safety.  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 6, at 61, ECF No. 48.)  When discoverable information may give rise to institutional safety and security concerns, courts balance the need for the information and the extent the information compromises security to determine whether disclosure is warranted.  <u>See Marti</u>, 2012 U.S. Dist. LEXIS 77962, at *5-6.  A conclusory objection based on institutional security, however, is insufficient.  <u>See Goolsby v. Carrasco</u>, No.

1  1:09-cv-01650 JLT (PC), 2011 U.S. Dist. LEXIS 71627, at *17-18

2  (E.D. Cal. July 5, 2011).

3      Defendant Kuzil-Ruan objects that producing these documents

4  will compromise institutional security but does not explain how.

5  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 6, at 61-62, ECF No. 48.)

6  There is nothing to show that producing particular documents

7  pertaining to lockdowns affects safety and security.  Cf. Walker v.

8  Ryan, No. CV-10-1408-PHX-JWS (LOA), 2012 U.S. Dist. LEXIS 63606, at

9  *8-9 (D. Ariz. May 7, 2012) (finding that providing details about

10 how prison gang members are identified and how gang intelligence is

11 analyzed and collected would compromise prison security); see also

12 Ibanez v. Miller, No. CIV S-06-2668 JAM EFB P, 2009 U.S. Dist.

13 LEXIS 98394, at *7-9 (E.D. Cal. Oct. 22, 2009) (reviewing the

14 associate warden's declaration and concluding that disclosing

15 details about how prison officials respond to prison alarms would

16 compromise prison safety).  Defendant's conclusory objection is

17 overruled.

18          **c.    Official information privilege**

19     Next, Kuzil-Ruan protests that document request 10 seeks

20 information that is protected by the official information

21 privilege.  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 6, at 61, ECF

22 No. 48.)  The Ninth Circuit has recognized a qualified privilege

23 for official information.  Kerr v. U.S. Dist. Ct. for the N. Dist.

24 of Cal., 511 F.2d 192, 198 (9th Cir. 1975).  A "court must balance

25 the government's interest in protecting official information from

26 disclosure against the plaintiff's need for the information."

27 Edwards v. Cnty. of L.A., No. CV 08-07428 GAF(SSx), 2009 U.S. Dist.

28 LEXIS 114577, at *7 (C.D. Cal. Dec. 9, 2009).  This balancing test

1   is "moderately pre-weighted in favor of disclosure" in civil rights

2   cases.   Kelly v. San Jose, 114 F.R.D. 653, 661 (N.D. Cal. 1987).

3       Before the court engages in this balancing, the party seeking

4   to invoke the privilege must make a "substantial threshold

5   showing."   Buchanan v. Las Vegas Metro. Police Dep't, No. 2:11-cv-

6   00271-RCJ-GWF, 2012 U.S. Dist. LEXIS 85144, at *3 (D. Nev. June 20,

7   2012) (quoting Kelly, 114 F.R.D. at 661).   Specifically, the

8   withholding party must submit a declaration from a department head

9   who controls the records that includes the following:

10          (1) an affirmation that the agency generated or collected
            the material at issue and has maintained its
11          confidentiality; (2) a statement that the official has
            personally reviewed the material in question; (3) a
12          specific identification of the governmental or privacy
            interests that would be threatened by disclosure of the
13          material to plaintiff and/or his lawyer; (4) a
            description of how disclosure subject to a carefully
14          crafted protective order would create substantial risk of
            harm to significant governmental interests if disclosure
15          were made.

16   Edwards, 2009 U.S. Dist. LEXIS 114577, at *7-8.   If the

17   nondisclosing party does not meet this initial burden, the court

18   will order disclosure of the documents; if the party meets this

19   burden, the court generally conducts an in camera review of the

20   material and balances each party's interests.   Soto v. City of

21   Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995); Kelly, 114 F.R.D. at

22   671.

23       Here, Defendant Kuzil-Ruan has not made the requisite showing

24   to assert the official information privilege because she has not

25   submitted a declaration with sufficient information to warrant a

26   balancing of competing interests.   See Edwards, 2009 U.S. Dist.

27   LEXIS 114577, at *8-9.   Nor has Defendant demonstrated why lockdown

28   documentation constitutes official information.   See id. at *10

15

(finding insufficient information to apply the balancing test in the stipulation for in camera review and proposed order); see also Kelly, 114 F.R.D. at 672 (stating that generalized claims of harm are insufficient to satisfy the objecting party's burden).  Kuzil-Ruan's official information privilege objection is also overruled.

### d.   Relevance, overbreadth, and burdensomeness

Defendant also objects to request for production of documents 10 because it is overbroad, burdensome, and irrelevant.  Rogers contends that his request is relevant. (Ex Parte Mot. Compel Disc. 2, ECF No. 42.)

Plaintiff seeks documentation showing the dates of the ten-day and one-day lockdowns of the "B-Yard." (See Reply Ex. 2, at 22, ECF No. 50.)  This information is relevant to Rogers's claim that the lockdowns interfered with the exercise of his religious beliefs.  Furthermore, Defendant makes no showing that the request is irrelevant.  See Painters Joint Comm. v. Emp. Painters Trust Health & Welfare Fund, No. 2:10-cv-01385-JCM-PAL, 2011 U.S. Dist. LEXIS 113278, at *16 (D. Nev. Sept. 29, 2011) (indicating that the party opposing the discovery bears the burden of showing that a request is not relevant by specifically detailing the reasons).  Defendant's relevance objection is overruled.

As for overbreadth, however, Rogers's request is open-ended and seeks documents that are beyond the relevant range of events, making his request too broad.  See Perez v. Cate, No. C 10-3730 JSW (PR), 2012 U.S. Dist. LEXIS 49706, at *2 (N.D. Cal. Apr. 9, 2012) (finding that a request seeking all "work histories of past suits, reprimands for misbehavior and misuse of force" was too broad).  As drafted, Plaintiff seeks documents for every ten-day and one-day

lockdown that has ever occurred in the "B-yard" at Centinela State Prison.  See Manriquez v. Huchins, No. 1:09-cv-00456-OWW-SMS PC, 2011 U.S. Dist. LEXIS 82350, at *15-19 (E.D. Cal. July 27, 2011) (finding that document request seeking cell extractions for all inmates on a specified date was overbroad and limiting the scope to the cell extraction of the plaintiff).  Kuzil-Ruan's overbreadth objection is sustained in part.  Rogers's request is limited to documents for lockdown dates from February 2010, when Plaintiff alleges the lockdowns began, to June 2011.

Finally, there is no indication that document request 10 is unduly burdensome.  Johns v. Bayer Corp., No. 09-cv-1935-AJB(DHB), 2012 U.S. Dist. LEXIS 60121, at *10 n.4 (S.D. Cal. Apr. 30, 2012) (noting that defendant did not provide evidence as to how responding to Rule 30(b)(6) deposition notice was unduly burdensome); see Pham v. Wal-Mart Stores, Inc., No. 2:11-cv-01148-KJD-GWF, 2011 U.S. Dist. LEXIS 130038, at *14-15 (D. Nev. Nov. 9, 2011) (finding that a document request requiring "just over 56 hours" to review and locate responsive information was not an undue burden).  Defendant Kuzil-Ruan's undue burden objection is overruled.

Accordingly, Plaintiff's Motion to Compel further responses to document request 10 is **GRANTED in part.**  Defendant is to supplement her production by providing Rogers with documents concerning ten-day and one-day lockdowns from February 2010 to June 2011.  Although it appears that some of the documents already produced may be responsive, neither Kuzil-Ruan's response to document request 10 nor her Opposition indicates whether all the documents pertaining

to this specific request have been produced.  Plaintiff is entitled to all responsive documents for this time period.

**2.   Document requests 5, 8, and 9**

Document request 5 states, "Plaintiff request[s] a copy of the result from the June 12, 2010, loss of the single bullet in Building 1 on the B-Yard."  (Reply Ex. 2, at 21, ECF No. 50.) Next, in request for production 8, Rogers seeks "a copy of the actual name of the MTA on May 28, 2010, whom lent the scissor [sic] to the named MTA on the C-Yard." (Id. at 22.)  Document request 9 reads, "Plaintiff request[s] a copy of the actual name of the dental staff on Aug. 24, 2010, who lost the dental tool."  (Id.)

Kuzil-Ruan objects to these document requests on attorney-client privilege and work product grounds.  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 6, at 58, 60-61, ECF No. 48.)  Also, the requests are overbroad, burdensome, irrelevant, and improperly seek information regarding institutional safety and security as well as official information based on federal and state law.  (Id.)  The Defendant further maintains that the document requests invade her right to privacy under California Penal Code §§ 832.7 and 832.8. (Id.)  In her supplemental responses to requests 8 and 9, Defendant stated, "After a diligent search, Defendant confirms that no such documents exists.  Defendant will produce the status report authorizing the lockdown as a result of a missing [pair of scissors][,]" (id. at 60), and "missing dental tool," (id. at 61).

**a.   Document request 5**

In his Motion to Compel, Rogers insists that his discovery requests are relevant and that the information is unavailable elsewhere.  (Ex Parte Mot. Compel Disc. 2, ECF No. 42.)  Defendant

Kuzil-Ruan states that she has produced 109 pages of responsive documents. (See Def.'s Opp'n Mot. Compel 4, ECF No. 48 ("[Defendant] also produced 109 pages of documents related to the lockdowns and the three to five percent budget cuts CDCR faced statewide.").) Rogers complains that the documents produced for request 5 are insufficient because they do not provide the names of the individuals who were in "Building One's tower" when the single bullet was lost. (Reply 4, ECF No. 50.)

As discussed previously, subject to her objections, Defendant produced eighty-one "Program Status Report Part B - Plan of Operation/Staff & Inmate Notification" forms, eight "Program Status Report Part C - Weekly Status/Closure" forms, and four "Program Status Report Part A - Initial Notification" forms. (See generally Reply Ex. 6, ECF No. 50.) These documents describe the restrictions imposed on inmates during the lockdowns, why the lockdowns were implemented, and the events giving rise to the lockdowns. (Id.)

The documents produced are responsive to Plaintiff's document request 5, as drafted. See McGinnis v. Atkinson, No. 1:11-cv-01337 LJO JLT (PC), 2012 U.S. Dist. LEXIS 74069, at *8 (E.D. Cal. May 29, 2012) (denying motion to compel where the documents produced were responsive). Rogers seeks documents showing the "result" of the lost bullet, not the names of the individuals who were involved. (See Def.'s Opp'n Mot. Compel Attach. #1 Ex. 2, at 20-21, ECF No. 48.) The produced documents concern the events surrounding the lost bullet. (See id. Ex. 6, at 83-84, 86, 88, 90-95; id. Attach. #1 Ex. 6, at 1-6, 9-14.) The documents indicate when the bullet was lost, what actions were taken to find it, and what restrictions

were placed on inmates during the search.  (Id.)  The documents produced are responsive, although they do not identify any correctional staff by name.  Presumably, Defendant has produced all responsive documents.  Consequently, Plaintiff's Motion to Compel a further response to document request 5 is **DENIED**.

### b. Document requests 8 and 9

Again, the Defendant generally argues that she has produced 109 pages of responsive documents, but Rogers claims that the quantity is excessive and the documents actually relate to the same dates.  (See Def.'s Opp'n Mot. Compel 3-4, ECF No. 48; Pl.'s Reply 3, ECF No. 50.)  Plaintiff also asserts that the documents produced are insufficient because they do not reveal the names of the medical staff working on May 16, 2010, or the dental staff working on August 17, 2010, as requested.  (Pl.'s Reply 4, ECF No. 50.)

Requests 8 and 9 seek documents identifying staff by name. The Defendant responds to both requests, stating that no such documents exist.  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 6, at 60-61, ECF No. 48.)  Defendant has produced a status report in response to request 8 and a progress report in response to request 9.  (See id.)  The 109 pages of produced documents do not include the names of the staff who lent and received the scissors on May 28, 2010.  The produced documents also do not show the names of the dental staff who lost the dental tool on August 24, 2010.  Kuzil-Ruan has asserted multiple objections and has not produced documents that identify individuals and are responsive to document requests 8 and 9.  As a result, the Court must address her objections.

### i.   Relevance

The Defendant objects that the information in requests 8 and 9 is not relevant.  (Id.)  Plaintiff asks Defendant to produce records reflecting the names of the individuals who lent the scissors, received the scissors, and lost the dental tool.  This information is relevant to Rogers's RLUIPA claim against Kuzil-Ruan because these individuals could provide insight into whether the lockdowns were imposed to perpetuate the reduction plan or were a valid response to losing medical scissors and a dental tool.  Further, Defendant's blanket assertion that the requests are irrelevant is insufficient.  See Painters Joint Comm., 2011 U.S. Dist. LEXIS 113278, at *16-17.  This objection is overruled.

### ii.   Other objections

Kuzil-Ruan also objects that the information Rogers seeks is protected by the attorney-client privilege and constitutes work product and that the requests are overbroad and burdensome; she also argues that the requested information will compromise prison safety.  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 6, at 60-61, ECF No. 48.)  As discussed above, these blanket objections are unavailing.  See Marti, 2012 U.S. Dist. LEXIS 77962, at *50 (stating that boilerplate objections are insufficient).

The Defendant has not demonstrated how documents containing the names of the individuals involved with the lost items that led to the lockdowns constitutes a protected attorney-client communication or work product.  See Richey, 632 F.3d at 566-67; Moe v. Sys. Transp., Inc., 270 F.R.D. 613, 625 (D. Mont. 2010) ("The party resisting discovery . . . on the grounds of the work product doctrine . . . bears the burden of establishing the right to

21

withhold the documents."). Kuzil-Ruan also has not explained how
the requests are overbroad or unduly burdensome. See Painters
Joint Comm., 2011 U.S. Dist. LEXIS 113278, at *16. Finally, a case
has not been made that providing documents identifying the
individuals involved will compromise prison safety. See Marti,
2012 U.S. Dist. LEXIS 77962, at *18-19 (overruling a boilerplate
objection because there was no legitimate basis for it).
Therefore, Kuzil-Ruan's privilege, work product, overbreadth,
burdensome, and prison safety objections are overruled.

### iii. Official information and privacy

Next, Defendant protests in a conclusory fashion that requests
8 and 9 seek information protected by the official information
privilege under California Penal Code §§ 832.7 and 832.8. (Def.'s
Opp'n Mot. Compel Attach. #1 Ex. 6, at 60-61, ECF No. 48.) Also,
the requests invade the Defendant's privacy rights. (Id.)

Although Kuzil-Ruan relies on state privilege law in her
objections, federal law dictates whether a privilege applies in §
1983 cases. See Heilman v. Vojkufka, No. CIV S-08-2788 KJM EFB P,
2011 U.S. Dist. LEXIS 26004, at *47 (E.D. Cal. Feb. 17, 2011)
(citing Agster v. Maricopa Cnty., 422 F.3d 836, 839 (9th Cir.
2005)); see also Hampton v. City of San Diego, 147 F.R.D. 227, 228,
230 (S.D. Cal. 1993) (explaining that in civil rights cases
questions of privilege are governed by federal law); Miller v.
Pancucci, 141 F.R.D. at 297-300 (discussing conflict between
California and federal evidence and concluding that courts use
federal law when resolving claims of official government
information). Courts determine whether the information should be
disclosed in light of the competing interests, even though the test

22

is slightly weighted in favor of disclosure in civil rights cases. See Kelly, 114 F.R.D. at 661, 663.  Nevertheless, as a threshold matter, the party claiming the privilege must provide the court with a declaration sufficient to conduct the balancing test and determine whether the privilege applies.  See Edwards, 2009 U.S. Dist. LEXIS 114577, at *7-8.

Defendant failed to comply with the requirements for asserting the official information privilege.  See Robinson v. Adams, No. 1:08-cv-01380-AWI-BAM PC, 2012 U.S. Dist. LEXIS 41165, at *6-8 (E.D. Cal. Mar. 26, 2012) (explaining that the court did not abuse its discretion when it ordered production of documents, subject to an in camera review, and overruled defendant's information privilege objection for failure to follow procedural requirements). The Court has insufficient information to conduct a meaningful balancing of documents claimed to be privileged official information.  See Soto, 162 F.R.D. at 613.  This objection is overruled.

As for privacy, federal courts recognize "a constitutionally-based right of privacy that can be raised in response to discovery requests."  Guthrey v. Cal. Dep't of Corr. & Rehab., No. 1: 10-cv-02177-AWI-BAM, 2012 U.S. 89174, at *27 (E.D. Cal. June 27, 2012) (citation omitted).  The right to privacy is not absolute and can be outweighed; courts generally balance the need for the information against the severity of the invasion of privacy.  See Ragee v. MCA/Universal, 165 F.R.D. 601, 604-05 (C.D. Cal. 1995) (finding that disclosing employment records is not "unusual or unexpected").  Disclosure must be narrowly construed to limit the invasion "'to the extent necessary for a fair resolution of the law

suit.'"   Id. at 605 (quoting Cook v. Yellow Freight Sys., Inc., 132
F.R.D. 548, 552 (E.D. Cal. 1990)).

Rogers's need for information outweighs the severity of the
invasion.  The objection appears to be premised on Defendant's
privacy, not staff members' privacy rights.  Nevertheless, document
requests 8 and 9 will not result in an invasion of privacy, of the
Defendant or correctional staff.

### iv.  Documents do not exist

Lastly, the Defendant represents that no documents exist that
are responsive to requests 8 and 9.  (Def.'s Opp'n Mot. Compel.
Attach. #1 Ex. 6, at 60-61, ECF No. 48.)  Rogers contends that
despite Kuzil-Ruan's supplemental response, she failed to "produce
the names of the medical staff and correction officers involved
with the loss of medical scissors [on] May 16, 2010. . . . [and]
the name of the dental staff who lost a dental tool, [on] Aug. 17,
2010."  (Reply 4, ECF No. 50.)

A party is deemed to have control over documents if he or she
has a legal right to obtain them.  See Clark v. Vega Wholesale,
Inc., 181 F.R.D. 470, 472 (D. Nev. 1998); see also 7 James Wm.
Moore, et al., Moore's Federal Practice, § 34.14[2][b], at 34-73 to
34-75 (3d ed. 2012) (footnote omitted) ("The term 'control' is
broadly construed.").  A party responding to a document request
"'cannot furnish only that information within his immediate
knowledge or possession; he is under an affirmative duty to seek
that information reasonably available to him from his employees,
agents, or others subject to his control.'"  Meeks v. Parsons, No.
1:03-cv-6700-LJO-GSA, 2009 U.S. Dist. LEXIS 90283, at *11-12 (E.D.

Cal. Sept. 18, 2009) (quoting Gray v. Faulkner, 148 F.R.D. 220, 223 (N.D. Ind. 1992)).

A party must make a reasonable inquiry to determine whether responsive documents exist, and if they do not, the "party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." Marti, 2012 U.S. Dist. LEXIS 77962, at *49-50 (citing Uribe v. McKesson, No. 08cv1285 DMS (NLS), 2010 U.S. Dist. LEXIS 35359, at *2-3 (E.D. Cal. Mar. 8, 2010)). A party, however, is not required to create a document where none exists. Goolsby v. Carrasco, 2011 U.S. Dist. LEXIS 71627, at *20-21 (finding that a document request that would require the defendant to create a roster of all employees who supervised the prison cage yard is not a proper request under Federal Rule of Civil Procedure 34(a)); Robinson v. Adams, No. 1:08-cv-01380-AWI-SMS PC, 2011 U.S. Dist. LEXIS 60370, at *53 (E.D. Cal. May 27, 2011) (ruling that defendant is not required to create a document in response to a request for production).

Here, Defendant asserts that she conducted a diligent search and confirmed that there are no documents responsive to requests 8 and 9. (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 6, at 60-61, ECF No. 48.) Defendant must do more than merely assert that the search was conducted with due diligence; rather, she must briefly describe the search to allow the Court to determine whether it was reasonable. See Marti, 2012 U.S. Dist. LEXIS 77962, at *49-50. Plaintiff similarly failed to meet his burden of showing that Defendant actually controls the documents. See Int'l Petroleum & Indus. Workers, 870 F.2d at 1452. Nevertheless, responsive

1  documents are likely to exist; prisons generally maintain employee
2  records that contain the employee's name, the employee's schedule,
3  where they worked, and when they worked.  See Meeks, 2009 U.S.
4  Dist. LEXIS 90283, at *11.

5      When a party responds to a document request with an answer as
6  opposed to production or an objection, the party must answer under
7  oath.  7 James Wm. Moore, et al., Moore's Federal Practice, §
8  34.13[2][a], at 34-57 (footnote omitted); see id. § 34.14[2][a], at
9  34-73 (footnote omitted).  If Defendant Kuzil-Ruan's maintains that
10 there is no relevant material in her control, she must state so
11 under oath.  See Vazquez-Fernandez v. Cambridge Coll., Inc., 269
12 F.R.D. 150, 155 (D. P.R. 2010).  Plaintiff's Motion to Compel a
13 further response to requests 8 and 9 is **GRANTED.**

14 **C.   Interrogatories**

15     On November 17, 2011, Rogers served Defendant with a set of
16 interrogatories.  (Pl.'s Reply Ex. 1, at 18, ECF No. 50.)  Kuzil-
17 Ruan served her objections to the interrogatories on December 20,
18 2011.  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 3, at 27, ECF No.
19 48.)  On April 26, 2012, Defendant supplemented her responses to
20 Rogers's interrogatories.  (Id. at 3 (citing id. Attach. #1 Ex. 5,
21 at 53).)  Plaintiff argues that Kuzil-Ruan has failed to answer
22 interrogatories 13, 14, 15, 16, 17, and 18.  (Pl.'s Reply 1-2, ECF
23 No. 50.)

24     **1.   Interrogatories 13, 14, and 15**

25     Interrogatory 13 reads:

26         If the answer to interrogatory 12 is yes, did you
         authorize any rolling lockdowns or/and three series of
27         ten day lockdowns (May 18-28, 2010; June 12-22, 2010;
         [and] Aug. 13-24, 2010) to substantiate regulation pasted
28         [sic] down by Warden Uribe and Director G.J. Giurbino
         which involved the 3% to 5% Staff Reduction Plan?

26                                                    11cv560 IEG(RBB)

(Id. Ex. 1, at 16.)   Interrogatory 12 asked whether Kuzil-Ruan was captain of the B-yard between March 2010 and June 2011.   (Id.) Interrogatory 14 states, "If the answer to interrogatory 13 is no, what was your purpose for authorizing the rolling lockdowns or/and three series of ten day lock-downs between the months of March 2010 thru June 2011?"   (Id.)   Finally, interrogatory 15 reads, "If the answer to interrogatory 12 is yes, did any rolling lockdowns and any three series of ten day lockdowns affect Plaintiff Rogers, Tyrone or any other protestant inmates from attending any type of B-Yard Chapel service or schooling?"   (Id.)

Defendant objects to interrogatories 13, 14, and 15 because they seek information that is protected by the attorney-client privilege and the work product doctrine.   (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 5, at 47-48, ECF No. 48.)   Kuzil-Ruan also objects that the interrogatories are overbroad, burdensome, irrelevant, and improperly seeks information regarding institutional safety and security as well as official information.   (Id.)   Additionally, she objects that request 14 is "vague in that Defendant did not authorize the lockdowns."   (Id.)   In her supplemental responses, Defendant answered, "No" to interrogatory 13, and in response to interrogatory 14, she stated that "Defendant P. Kuzil-Ruan did not authorize the lockdowns."   (Id.)

### a.   Interrogatories 13 and 14

Captain Kuzil-Ruan asserts that, as the only remaining Defendant, she has provided sufficient supplemental responses to answer the interrogatories applicable to her.   (Def.'s Opp'n Mot. Compel 4, ECF No. 48.)   In his Reply, Plaintiff counters that Captain Kuzil-Ruan failed to fully respond to the interrogatories.

(Reply 2, 5, ECF No. 50.)  He urges that this hinders his ability to obtain material evidence that is unavailable elsewhere, locate additional witnesses, and correct information already exchanged. (Id.)

Defendant's answers to interrogatories 13 and 14 are responsive.  She states that she did not authorize any lockdowns that involved the staff reduction plan; in fact, she submits that she did not authorize any lockdowns.  See Allianz Ins. Co., v. Surface Specialties, Inc., No. 03-2470-CM-DJW, 2005 U.S. Dist. LEXIS 301, at *22-23 (D. Kan. Jan. 7, 2005) (finding the answer, no, was responsive to an interrogatory asking if plaintiff received any "statements" from defendant or others identified in the interrogatory).  For interrogatory 13, Kuzil-Ruan answers that she did not authorize the lockdowns.  For interrogatory 14, because Kuzil-Ruan answers that she did not authorize the lockdowns, she was not responsible for the decision.  Therefore, Plaintiff's Motion to Compel further responses to interrogatories 13 and 14 is **DENIED**.

### b.   Interrogatory 15

In her supplemental response to interrogatory 15, Defendant stated:

> Defendant cannot respond without knowing the dates on which Plaintiff was allegedly prevented from attending services.  Generally, a lockdown will prevent inmates from attending non-critical programs, such as religious services outside their cell, on the day of the lockdown. The prison staff would make every effort to reschedule any group religious services that inmates missed as a result of a lockdown.

(Def.'s Opp'n Mot. Compel Attach. #1 Ex. 5, at 49, ECF No. 48.)

Indeed, interrogatory 15 does not provide Kuzil-Ruan with any specific lockdown dates.  (See Reply Ex. 1, at 16.)  Nevertheless,

when viewed in the context of the other interrogatories and
Plaintiff's definition of "incident," a reasonable interpretation
of interrogatory 15 would include lockdowns that occurred during
the relevant period, which is February 2010 to June 2011.  (See id.
at 14-17); Jourdan, 951 F.2d at 109 (explaining that courts should
liberally construe pro se plaintiffs' arguments).  The Defendant's
supplemental response, then, is incomplete.  Absent a valid
objection to interrogatory 15, Rogers is entitled to this
information.

### i.   Relevance

Kuzil-Ruan again asserts a boilerplate relevance objection.
(Def.'s Opp'n Mot. Compel Attach. #1 Ex. 5, at 49, ECF No. 48.)
Interrogatory 15 seeks relevant information relating to whether the
lockdowns affected Plaintiff's religious practice.   From this
information, Plaintiff can attempt to determine the reasons for,
and effects of, the lockdowns on those specific dates.  See Avila
v. Cate, No. 1:09-cv-00918-SKO PC, 2011 U.S. Dist. LEXIS 34529, at
*8 n.3 (E.D. Cal. Mar. 24, 2011) (requiring defendant to produce
all documents relating to lockdown of Hispanic inmates over a
thirteen month period).  As applied to Rogers's claim that the
lockdowns interfered with his religious practices, Kuzil-Ruan's
relevance objection is overruled.

### ii.   Attorney-client privilege and work product

Defendant protests that interrogatory 15 seeks information
protected by the attorney-client privilege and the work product
doctrine.  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 5, at 49, ECF
No. 48.)  Plaintiff argues that Kuzil-Ruan does not provide the

Court with sufficient information to determine whether these
objections are valid.  (Ex Parte Mot. Compel 2, ECF No. 42.)

As discussed, general boilerplate objections are insufficient
to assert attorney-client privilege or work product doctrine
objections.  Burlington N. & Santa Fe Ry., 408 F.3d at 1147.  A
party asserting the attorney-client privilege must identify
specific communications and the basis for each claim of privilege.
See United States v. Salyer, No. CR. 10-0061 LKK, 2012 U.S. Dist.
LEXIS 18649, at *9 (E.D. Cal. Feb. 15, 2012) (citing United States
v. Martin, 278 F.3d 988, 1000 (9th Cir. 2002)).  Additionally, to
assert the work product doctrine, a party must establish that the
information or documents it seeks to withhold were prepared in
anticipation of litigation.  Chevron Texaco Corp., 241 F. Supp. 2d
at 1080-81.  Captain Kuzil-Ruan's objections are insufficient and
are overruled.

### iii. Burdensomeness, overbreadth, and prison safety

An objecting party must make some showing that the
interrogatory is unduly burdensome or overly board.  See Hall v.
Tehrani, No. C 09-0057 RMW (PR), 2011 U.S. Dist. LEXIS 83284, at *3
(N.D. Cal. July 29, 2011).  Kuzil-Ruan's objections on these
grounds are overruled.

To assert that institutional safety would be compromised by
answering the interrogatory, the Defendant must provide more than a
vague boilerplate objection.  See Goolsby, 2011 U.S. Dist. LEXIS
71627, at *17-18.  An objecting party must follow the procedural
requirements to assert the official information privilege.  See
Williams, 2009 U.S. Dist. LEXIS 122970, at *24-26 (explaining that
objections based on official information privilege must be made by

the warden, assistant warden, or appropriately delegated prison official who personally considers the material requested and explains why it is privileged).  Defendant's institutional safety objection fails.

Plaintiff's Motion to Compel a further response to interrogatory 15 is **GRANTED.**

### 2.   Interrogatories 16, 17, and 18

In interrogatory 16, Plaintiff asks, "If the answer to interrogatories 1, 6, [and] 12 are yes, were any of the rolling lockdowns or/and three series of ten day lockdowns substantiated by a legal penological interest?"  (Reply Ex. 1, at 16, ECF No. 50.) Interrogatory 17 reads, "If the answer to interrogatory 16 is yes or no, what were the penological interests CDCR Codes or Penal Codes used to authorize the rolling lockdowns or/and three series of ten day lockdowns between the months of March 2010 thru June 2011?"  (Id. at 17.)  In interrogatory 18, Rogers states, "If the answer[s] to interrogatories 1, 6, [and] 12 are yes, is the use of the 3% to 5% Staff Reduction Plan to reduce California financial deficit a part of any known legal penological interest to lockdown Plaintiff Tyrone Rogers or any other inmate at CEN?"  (Id.)

Kuzil-Ruan objected to all three interrogatories on the ground they seek information protected by the attorney-client privilege and work product doctrine.  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 5, at 49-51, ECF No. 48.)  She also contends that the interrogatories are overbroad, burdensome, irrelevant, and they request information regarding institutional safety and security, as well as official information.  (Id.)  The Defendant objected that the interrogatories are vague because "the answer to Interrogatory

31

1 and 6 is no, while the response to Interrogatory 12 is yes, but
only to a portion of the time, making the contention portion of the
interrogatory inapplicable."  (Id.)

Rogers claims that the requested discovery will assist him in
finding additional relevant information and additional witnesses.
(Ex Parte Mot. Compel 3, ECF No. 42.)  Kuzil-Ruan asserts as the
only remaining Defendant, she has provided sufficient supplemental
responses to Plaintiff's discovery requests; she answered all the
interrogatories that were applicable to her.  (Def.'s Opp'n Mot.
Compel 4, ECF No. 48.)  In her supplemental response, Kuzil-Ruan
answered interrogatories 16, 17, and 18:  "Not Applicable."  (Id.
Attach. #1 Ex. 5, at 49-51.)

### a.   Relevance

Interrogatories 16, 17, and 18 seek relevant facts, as all
three request information about Defendant's asserted compelling
governmental interest in locking down the "B-Yard."  Question 16
asks the Defendant to identify the compelling interests; 17 asks
what laws or regulations the Defendant relied on when authorizing
the lockdowns, and 18 asks whether a lockdown based on the "3% to
5% Staff Reduction Plan" is a legitimate penological interest.
(See Reply Ex. 1, at 16-17, ECF No. 50.)  Whether a penological
interest is compelling is an integral component of a RLUIPA claim.
The Defendant's relevance objections to interrogatories 16, 17, and
18 are overruled.

### b.   Attorney-client privilege and work product

Although Kuzil-Ruan must assert the particular basis for her
attorney-client privilege objection, she fails to do so.  See
Salyer, 2012 U.S. Dist. LEXIS 18649, at *9.  Defendant also does

1 not specify what information was generated in anticipation of

2 litigation to constitute work product.  See Chevron Texaco Corp.,

3 241 F. Supp. 2d at 1080-81.  These objections are overruled.

4        **c.   Other objections**

5     Next, Kuzil-Ruan argues that the interrogatories are

6 overbroad, burdensome, improperly seek information about prison

7 safety and official information.  (Def.'s Opp'n Mot. Compel Attach.

8 #1 Ex. 5, at 49-51, ECF No. 48.)  Again, the Defendant does not

9 establish how interrogatories 16, 17, and 18 are burdensome or

10 overbroad.  See Tehrani, 2011 U.S. Dist. LEXIS 83284, at *3.  Nor

11 does she satisfy the threshold requirement for asserting a prison

12 safety objection.  Goolsby, 2011 U.S. Dist. LEXIS 71627, at *17-18

13 (explaining that vague institutional security objections are

14 insufficient).  There is no indication that the interrogatories

15 request information that would compromise safety; they merely seek

16 information relating to whether these were legitimate penological

17 justifications for instituting the lockdowns.  Additionally,

18 Defendant does not comply with the procedural requirements for

19 asserting the official information privilege - she offers no

20 explanation as to what requested information is privileged or how

21 the privilege applies.  See Rackliffe, 2012 U.S. Dist. LEXIS 57973,

22 at *10.  The institutional safety, burden, overbreadth, and

23 official information objections are overruled.

24        **d.   Vagueness**

25     Finally, Defendant objects that interrogatories 16, 17, and 18

26 are vague.  (Def.'s Opp'n Mot. Compel Attach. #1 Ex. 5, at 49-51,

27 ECF No. 50.)  In particular, the claimed vagueness renders the

28 contention portions of the interrogatories inapplicable because

they rely on interrogatories 1, 6, and 12.  (Id.)  Interrogatory 1
states, "During March 2010, were you G.J. Giurbine the Director of
the Division of Adult Operations for California's prison system?"
(Def.'s Opp'n Mot. Compel Attach. #1 Ex. 5, at 41, ECF No. 48.)
Rogers asks in interrogatory 6, "During March 2010, thru June 2011,
were you Uribe Domingo, Jr. the warden of Centinela State Prison
(CEN)?"  (Id. at 43.)  Interrogatory 12 asks, "During March 2010,
thru June 2011, were you defendant Cpt. Paul[a] Kuzil-Ruan captain
of the B-Yard?"  (Id. at 46.)  In her supplemental response, Kuzil-
Ruan answered "No" to interrogatories 1 and 6, but answered
interrogatory 12, stating that "Defendant was not the captain of
the B Yard during the entire period, but was for a portion of the
period."  (Id. at 41, 43, 46-47.)

     The party claiming that an interrogatory is vague has the
burden of demonstrating its vagueness.  Swackhammer v. Sprint
Corp., 225 F.R.D. 658, 662 (D. Kan. 2004) (footnote omitted).  The
responding party should exercise "common sense" and attribute
ordinary definitions to terms in discovery requests.  Id. (footnote
omitted).  Here, Defendant's explanation is insufficient to show
that interrogatories 16, 17, and 18 are vague.  Although Giurbino
and Domingo are no longer parties to this lawsuit, Kuzil-Ruan
responded to interrogatory 12; she should exercise common sense and
answer the interrogatories.  See Fed. R. Civ. P. 33(a)(2) (stating
that parties may not object because an interrogatory seeks an
opinion or contention that relates to facts or the application of
law to facts).  Interrogatories 1, 6, and 12 do not add conditional
information; they merely limit the questions to three of the four
Defendants named in the suit.  (See Second Am. Compl. 1, ECF No.

8.)   The subsequent dismissal of Giurbino and Uribe but does not make these interrogatories vague.  Kuzil-Ruan's vagueness objections are also overruled.

The Defendant has not provided responsive answers to interrogatories 16, 17, and 18; she has merely stated the questions are not applicable.  Kuzil-Ruan also has failed to make valid objections to the interrogatories.  Plaintiff's Motion to Compel further responses to interrogatories 16, 17, and 18 is therefore **GRANTED**.

**III.**

**MOTION FOR APPOINTMENT OF INVESTIGATOR**

Finally, in "Plaintiff's Motion for Appointment of Investigator Under Rule 26 [ECF No. 56]," Rogers contends that Defendant Kuzil-Ruan was required to provide initial disclosures and the discovery he now seeks.  (Mot. Appointment Investigator 3, ECF No. 58.)  Plaintiff maintains that he needs an investigator to compel proper responses from Defendant.  (Id. at 4.)  Specifically, an investigator will help Rogers pursue information that will prevent him from having to survive summary judgment motions.  (Id.)  To date, Defendant Kuzil-Ruan has not filed an opposition to Rogers's request.  The Court will consider the merits of Plaintiff's Motion for Appointment of an Investigator despite Defendant's failure to oppose the request.  See S.D. Cal. Civ. R. 7.1(f)(c)(3).

A court may only authorize the use of public funds for indigent litigants when authorized by Congress.  Graves-Bey v. Hedgepeth, No. 1:08-cv-01718-LJO-GSA PC, 2009 U.S. Dist. LEXIS 109881, at *2 (E.D. Cal. Nov. 10, 2009) (citing Tedder v. Odel, 890

35

F.2d 210, 211-12 (9th Cir. 1989)).  The in forma pauperis statute does not authorize federal courts to spend public funds on investigators.  See 28 U.S.C.A. § 1915 (West 2006); see also Graves-Bey, 2009 U.S. Dist. LEXIS 109881, at *2 (finding the in forma pauperis statute does not authorize expenses for investigators).

Rogers does not refer to any statute or case that allows a court to appoint an investigator for an indigent pro se plaintiff in a § 1983 case.  See Strain v. Sandham, No. CIV S-05-0474 GEB GGH P, 2007 U.S. Dist. LEXIS 84688, at *3-4 (E.D. Cal. Nov. 1, 2007) (denying plaintiff's motion for appointment of investigator because the statute does not authorize that expense).  Plaintiff's Motion for Appointment of Investigator [ECF No. 58] is **DENIED.**

**IV.**

**MOTION FOR DEFAULT JUDGMENT**

Also before the Court is the following Motion:  "Plaintiff move[s] for Default Judgment on Defendant's Non Compliance to Plaintiff's Request for Production of Documents and Interrogatories Pursuant to Rule 55.1" [ECF No. 44].  The Court construes this as a Motion for Default Judgment.  To date, Defendant Kuzil-Ruan has not opposed this Motion.  Although the failure to oppose a motion may constitute consent to granting it, the Court will consider the merits of Rogers's Motion for Default Judgment.  S.D. Cal. Civ. R. 7.1(f)(3)(c).

Rogers argues that he is entitled to a default judgment because Kuzil-Ruan failed to produce discovery, in violation of Civil Local Rule 55.1.  (Mot. Default J. 1, 3, ECF No. 44.)  He explains that rule 55.1 requires courts to issue an order to show

36

cause why the complaint should not be dismissed if a plaintiff "fails to move for default judgment within thirty days of the entry of a default." (Id. at 3.) "Plaintiff is early filing this Default Judgment knowing the Court would have Plaintiff show cause why the complaint against defaulty [sic] party should not be dismissed." (Id. at 4 (citing cases dealing with having an adequate opportunity to conduct discovery).) Rogers further alleges that a default judgment is appropriate under Civil Local Rule 83.1 because Defendant "fail[ed] to comply with the Court['s] request," the Federal Rules of Civil Procedure, and "any other authorized statute." (Id.)

Civil Local Rule 55.1 is implicated when a default judgment has been entered, but no default has been entered in this case. See S.D. Cal. Civ. R. 55.1. Although Rogers appears to also rely on civil local rule 26.1(a) in support of default, the rule is inapplicable. See S.D. Cal. Civ. R. 26.1(a), (a)(3), (e) (describing the meet and confer requirement). As discussed above, the parties did not meet and confer prior to the filing of Rogers's discovery motion, but this failure cannot support his request for default.

Further, Plaintiff cites to local rule 83.1, which explains that a default is an available sanction for a party's failure to comply with the local rules, the Federal Rules of Civil Procedure, or a court order. S.D. Cal. Civ. R. 83.1. Even if Plaintiff seeks an order entering a default judgment as a discovery sanction, relief is not warranted. To determine whether a default judgment is an appropriate sanction, courts look to five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the

court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Conn. Gen. Life Ins. Co. v. New Images of Beverley Hills, 482 F.3d 1091, 1096 (9th Cir. 2007) (quoting Jorgensen v. Cassidy, 320 F.3d 906, 912 (9th Cir. 2003)).  "This 'test' in not mechanical.  It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions . . . ."  Id.

As discussed, some of Defendant's responses are sufficient, and some of her objections are valid.  Even though many of the objections are unfounded, a default judgment is an inappropriate sanction.  The Court's need to manage its docket is not particularly affected.  See Allen v. Bayer Corp. (In re Phenylpropanolamine (PPA) Prods. Liab. Litig.), 460 F.3d 1217, 1227 (9th Cir. 2006).  Further, Rogers is not prejudiced by Defendant's discovery responses; delay alone is insufficient to warrant a default.  Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990).  Next, Kuzil-Ruan's conduct did not inhibit the progression of the litigation or interfere with the expeditious resolution of this case.  Allen, 460 F.3d 1228 ("We have often said that the public policy favoring disposition of cases on their merits strongly counsels against dismissal.").  Finally, the Court has had no previous occasion to sanction or warn Defendant that a default judgment is a possible sanction.  See id. at 1228-29 (explaining that a court abuses its discretion if it first imposes default judgment as a sanction without first considering whether less drastic sanctions are adequate).

1    No factors weigh in favor of a default judgment.  Although
2    Defendant Kuzil-Ruan's discovery responses are subject to
3    criticism, they do not fall to the level of being sanctionable.
4    See id. at 1226-29.  Rogers's Motion for Default Judgment [ECF No.
5    24] should be **DENIED**.

6                                    **V.**

7                                **CONCLUSION**

8    **A.   Plaintiff's Motion to Compel and Motion for Appointment of**
9    **Investigator**

10    For the reasons described previously, Plaintiff's Motion to
11   Compel [ECF No. 42] is **GRANTED in part** and **DENIED in part**.  His
12   Motion for Appointment of Investigator [ECF No. 58] is **DENIED.**
13   IT IS HEREBY ORDERED:

14       1.   Rogers's Motion to Compel further responses to document
15            request 1 is **DENIED** because the documents produced by
16            Defendant are responsive.  The Motion to Compel as to
17            document request 10 is **GRANTED in part.**  Kuzil-Ruan must
18            produce all relevant documents between February 2010 and
19            June 2011.  Plaintiff's Motion to Compel further
20            responses to document request 5 is **DENIED** because the
21            documents produced by Defendant are responsive.  The
22            Motion is **GRANTED** for document requests 8 and 9.
23       2.   Rogers's request to compel further responses to
24            interrogatories 13 and 14 is **DENIED** because Defendant's
25            answers are responsive to the questions as written.  As
26            to interrogatory 15, the Motion is **GRANTED,** as explained.
27            Plaintiff's Motion to Compel Kuzil-Ruan to provide
28

39

further responses to interrogatories 16, 17, and 18 is **GRANTED.**

3.   The Defendant is to provide Rogers with the supplemental discovery responses no later than <u>October 19, 2012</u>.

4.   Plaintiff's Motion for Appointment of Investigator [ECF No. 58] is **DENIED.**

**B.  Plaintiff's Motion for Default Judgment**

Along with the foregoing Order, the Court submits this accompanying Report and Recommendation to United States District Judge Irma E. Gonzalez under 28 U.S.C. s 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  Rogers's Motion for Default Judgment [ECF No. 44] should be **DENIED.**  For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the district court issue an Order (1) approving and adopting this Report and Recommendation that Plaintiff's Motion for Default Judgment [ECF No. 44] be **DENIED.**

**IT IS ORDERED** that no later than <u>October 19, 2012</u>, any party to this action may file written objections to the recommendation that the Motion for Default Judgment [ECF No. 44] be **DENIED.**  The objections are filed with the district court and a copy must be served on all the parties.  The document should be captioned "Objections to Report and Recommendation Denying Plaintiff's Motion for Default Judgment."

**IT IS FURTHER ORDERED** that any reply to these objections shall be filed with the Court and served on all parties no later than <u>October 31, 2012</u>.  The parties are advised that failure to file objections within the specified time may waive the right to rasie those objections on appeal of the Court's order.  <u>See</u> <u>Turner v.</u>

1 | <u>Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951

2 | F.2d 1153, 1156 (9th Cir. 1991).

3 |

4 | DATE: September 26, 2012

_____
RUBEN B. BROOKS

5 | United States Magistrate Judge

6 | cc:  Judge Gonzalez
      All Parties of Record

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |