UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE ROGERS,<br>Plaintiff,<br>v.<br>G.J. GIURBINO et al,<br>Defendants. | Case No.: 11cv560 WQH (RBB)<br><br>**REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANTS GIURBINO AND URIBE'S MOTION TO DISMISS THIRD AMENDED COMPLAINT [ECF NO. 129]; GRANTING DEFENDANT KUZIL-RUAN'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT [ECF NO. 131]** |

Plaintiff Tyrone Rogers, a state prisoner proceeding pro se and in forma pauperis, filed a Third Amended Complaint pursuant to 42 U.S.C. § 1983 on January 19, 2016 [ECF Nos. 3, 128]. Rogers claims that Defendants Giurbino, Uribe, Kuzil-Ruan, and Ruan's successive captains violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment through prison lockdowns that occurred from March 2010 to June 2011. (Third Am. Compl. 2-5, ECF

No. 128.)[1] On February 1, 2016, Defendants Giurbino and Uribe filed a "Motion to Dismiss Third Amended Complaint" [ECF No. 129]. Defendant Kuzil-Ruan also filed a "Motion to Dismiss Plaintiff's Third Amended Complaint" [ECF No. 131]. Plaintiff submitted "Rogers' Opposition to Defendants Notice of Motion to Dismiss Rogers' TAC with Memorandum of Points and Authorities," which was filed nunc pro tunc to February 17, 2016, addressing both motions to dismiss [ECF No. 140]. On February 29, 2016, Defendants Giurbino and Uribe filed a reply [ECF No. 132]. Kuzil-Ruan's untimely reply was stricken from the docket. (Mins. 1, Mar. 9, 2016, ECF No. 138.)

The Court has reviewed the Third Amended Complaint and exhibits, the motions to dismiss, the opposition, and the reply. For the reasons discussed below, Defendants Giurbino and Uribe's motion to dismiss [ECF No. 129] should be **GRANTED in part and DENIED in part**, and Defendant Kuzil-Ruan's motion to dismiss [ECF No. 131] should be **GRANTED**.

## I. FACTUAL BACKGROUND

The allegations that form the basis of Rogers's lawsuit arise from events that began in March of 2010 while he was incarcerated at Centinela State Prison ("Centinela"). (Third Am. Compl. 1, ECF No. 128.) In the Third Amended Complaint, Rogers contends that the Defendants violated his rights under RLUIPA and the First Amendment. (Id. at 3-5.) Plaintiff alleges that Giurbino and Uribe adopted a Staff Redirection Plan that resulted in rolling lockdowns. (Id. at 3-4.) The verified Third Amended Complaint and its attachments detail the basis for the Redirection Plan and the resulting effects. (See id. at 3-4, 8-9.) The lockdowns caused him "to [miss] attending his scheduled religious services on any given lockdown day without a compelling government interest and without the least restrictive means to further that interest." (Id. at 4.) Rogers asserts that Defendants placed a substantial burden on his right to religious exercise "by not allowing [him] to fellowship with other protestant faith inmates in the chapel for group study,

[1] The Court will cite to documents as paginated on the electronic case filing system.

group worship services, and group prayer service Sunday through Saturday." (Id.) Plaintiff maintains that as a result of these rolling lockdowns, he has still not completed the four-year seminary program that he began in 2010. (Id.)

In his verified pleading, Rogers describes the "unjustified loss of scissors," "unjustified [loss] of .223 caliber ammunition," and "unjustified missing dental tool" as the bases for three separate "unjustified lockdowns" on May 18-28, June 12-22, and August 17-24, 2010. (Id. at 5.) He appears to only blame Kuzil-Ruan for the first of these occurrences, but he asserts that these incidents were reported to Uribe and Giurbino, who "chose not to correct their subordinates." (Id.) He requests injunctive relief and damages. (Id. at 7.)

In analyzing the parties' motions to dismiss, the Court looks to case law addressing the issue of rolling lockdowns affecting prisoners' constitutional and religious rights. The issues presented in the Third Amended Complaint are not new. As discussed in further detail below, they have been considered before. See Haynes v. Hedgpeth, Case No. 12-cv-00363-JST (PR), 2015 U.S. Dist. LEXIS 30673 (N.D. Cal. Mar. 12, 2015).

## II. PROCEDURAL BACKGROUND

This case has a long procedural history. Plaintiff's original Complaint was filed on March 21, 2011 [ECF No. 1]. United States District Court Judge Irma E. Gonzalez issued an order sua sponte dismissing Rogers's Complaint for failure to state a claim [ECF No. 3]. Plaintiff filed his First Amended Complaint on May 31, 2011 [ECF No. 5], but this pleading was also sua sponte dismissed by Judge Gonzalez for the same reason [ECF No. 7]. Rogers filed his Second Amended Complaint on July 12, 2011 [ECF No. 8]. There, he stated causes of action against Defendants Giurbino, Uribe, Kuzil-Ruan, and Narvis under RLUIPA and the First, Eighth, and Fourteenth Amendments. (Second Am. Compl. 2-8, ECF No. 8.) Judge Gonzalez issued an order sua sponte dismissing Plaintiff's Eighth Amendment and access to courts claims and dismissing Defendant Narvis from the litigation. (Order Dismissing Claims 7, ECF No. 9.)

//

Defendants Uribe, Kuzil-Ruan, and Giurbino filed a motion to dismiss the Second Amended Complaint on October 31, 2011 [ECF No. 18]. Judge Gonzalez granted this motion in part and denied it in part on February 14, 2012 [ECF No. 33]. She granted the motion as to Plaintiff's claims under the First and Fourteenth Amendments, dismissed all claims against Defendants Giurbino and Uribe, and denied the motion to dismiss Rogers's RLUIPA claims. (Order re: Mot. Dismiss Second Am. Compl. 21, ECF No. 33.) Defendant Kuzil-Ruan answered on February 27, 2012 [ECF No. 34]. On November 13, 2012, Kuzil-Ruan moved for summary judgment [ECF No. 74]. Judge Gonzalez granted summary judgment in favor of Kuzil-Ruan on February 26, 2013 [ECF No. 96].

Rogers appealed several of the Court's orders [ECF No. 100], and on August 31, 2015, the Ninth Circuit issued an order affirming in part, reversing in part, and vacating in part Judge Gonzalez's decisions [ECF No. 112]. Of relevance, the Ninth Circuit reversed the dismissal of Plaintiff's First Amendment claim, vacated the dismissal of Giurbino and Uribe in their individual capacities, noted that the allegations were sufficient to pursue a cause of action against the two Defendants in their official capacities for injunctive relief, and directed the district court to address the issue of qualified immunity. (Rogers v. Giurbino, No. 13-55527, order at 5-8 (9th Cir. Sept. 23, 2015), ECF No. 112.) The Ninth Circuit additionally reversed the granting of summary judgment to Kuzil-Ruan on Rogers's RLUIPA claim for injunctive relief and directed the district court to examine on remand whether Plaintiff's claim for injunctive relief is moot or whether injunctive relief is proper under the changed circumstances. (Id. at 8-10.)

Plaintiff filed the Third Amended Complaint on January 19, 2016 [ECF No. 128], and the motions to dismiss followed [ECF Nos. 129, 131]. In addition to his opposition to these motions, Plaintiff submitted "Rogers' Ex Parte Application for Protective Order Staying Defendants' Motion to Dismiss the Third [Amended] Complaint Pending a Ruling on [Motion to] Compel Discovery," which was filed nunc pro tunc to February

//

22, 2016 [ECF No. 135]. On July 18, 2016, the Court denied the Ex Parte Application [ECF No. 144].

## III. DISCUSSION

### A. Legal Standards

#### 1. Standards applicable to pro se litigants

Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992) (citation omitted). In giving liberal interpretation to a pro se civil rights complaint, courts "may not supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id.; see also Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations unsupported by facts insufficient to state a claim under § 1983). "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim." Jones, 733 F.2d at 649 (citation omitted) (internal quotation marks omitted).

Nevertheless, the court must give a pro se litigant leave to amend his complaint "'unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)). Thus, before a pro se civil rights complaint may be dismissed, the court is required to provide the plaintiff with a statement explaining the complaint's deficiencies. Karim-Panahi, 839 F.2d at 623-24 (citation omitted). But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. See James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

**2. Motions to dismiss for failure to state a claim**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. See Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 633 (1999). A complaint must be dismissed if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court accepts as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and construes the complaint in the light most favorable to the plaintiff. Cholla Ready Mix v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); NL Indus. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986) (citation omitted).

The court does not look at whether the "plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); see Bell Atlantic Corp., 550 U.S. at 563 n.8. A dismissal under Rule 12(b)(6) is generally proper only where there "is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see also Cholla Ready Mix, 382 F.3d at 973 (stating that on a Rule 12(b)(6) motion, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged" (quoting Clegg v.

Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994))). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

In addition, when resolving a motion to dismiss for failure to state a claim, courts may not generally consider materials outside of the pleadings. Schneider v. California Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider, 151 F.3d at 1197 n.1. This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)). "When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ." Parks Sch. of Bus., 51 F.3d at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)).

**3. Stating a claim under 42 U.S.C. § 1983**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C.A. § 1983 (West 2012); Shah v. Cty. of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

**B. Discussion**

Defendants Giurbino, Uribe, and Kuzil-Ruan make several arguments in their motions to dismiss, some of which overlap. The Court addresses each argument below.

**1. Rogers's individual capacity claims against Giurbino and Uribe**

In their motion to dismiss, Giurbino and Uribe assert that Plaintiff "fails to state a claim against Defendants in their individual capacity." (Defs. Giurbino & Uribe's Mot. Dismiss 11, ECF No. 129.) They contend that in the Third Amended Complaint, Rogers

failed to cure the deficiencies noted by the Ninth Circuit regarding causation. (Id.) Giurbino and Uribe explain that there are no allegations that they personally implemented the rolling lockdowns or security lockdowns. (Id. at 12.) They argue that "[a]lthough Plaintiff alleges that Defendants Giurbino and Uribe knew about the lockdowns, this is insufficient to state a claim absent allegations that they implemented them or had any control over them whatsoever." (Id.)

> Most notably, there are no allegations linking the security lockdowns, which according to Plaintiff's own allegations were specifically a result of missing items that could be used as weapons, with the Staff Redirection Plan that Plaintiff alleges that Defendant Giurbino implemented and Uribe approved. Further, it is not plausible that Defendant Giurbino, who oversees operations for the entire state, would be involved in the programming for every single yard in response to every single incident. Without more, Plaintiff fails to meet the requisite elements for a 1983 claim because there is no plausible connection between the Staff Redirection Plan and the three short-term security lockdowns.

(Id. at 12-13.)

Rogers responds that he brought his RLUIPA claim against all three Defendants in both their individual and official capacities. (Opp'n Defs.['s] [Mots.] Dismiss 4, ECF No. 140.) Plaintiff asserts that the Ninth Circuit's ruling "held that Defendants Giurbino and Uribe violated Rogers' RLUIPA [rights], both in their official capacities for injunction relief only concerning Rogers' SAC. The Ninth Circuit and this Court granted Rogers leave to file a TAC against both Giurbino and Uribe in their individual capacity for injunctive relief." (Id.) He contends that his Third Amended Complaint against the two Defendants in their individual capacities meets the standards set forth in Federal Rule of Civil Procedure 8 and Wilkinson v. Dotson, 544 U.S. 74 (2005).

In their reply, Giurbino and Uribe argue that Rogers has failed to allege personal involvement, (Defs. Giurbino & Uribe's Reply Pl.'s Opp'n Mot. Dismiss 2, ECF No. 132 (citing Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988)), explaining that "Defendants have highlighted the fact that Plaintiff's Third Amended Complaint fails to allege that

Defendants personally implemented any of the rolling lockdowns or security lockdowns, which allegedly impeded Plaintiff's ability to engage in religious services[,]" (id.) They contend that Rogers's conclusory arguments regarding Rule 8 and Wilkinson do not show how his allegations are sufficient. (Id.) The Defendants conclude that "the Ninth Circuit found that Plaintiff failed to state a claim against Defendants [Giurbino] and Uribe in their individual capacities, and he has failed to cure that deficiency in his Third Amended Complaint." (Id.)

To be liable under § 1983, a person acting under color of state law must cause the plaintiff to suffer the violation of a constitutional right. 42 U.S.C.A. § 1983. "A person 'subjects' another to the deprivation of a constitutional right . . . if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citing Sims v. Adams, 537 F.2d 829 (5th Cir. 1976)). Thus, the plaintiff must allege that each of the defendants committed some act, or failed to act in a particular way, that was the cause of the purported constitutional injury. Williams v. Bennett, 689 F.2d 1370, 1385 (11th Cir. 1982). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer, 844 F.2d at 633.

Section 1983 of the Civil Rights Act does not authorize a plaintiff to bring a cause of action based on respondeat superior liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978) ("[T]he fact that Congress did specifically provide that A's tort became B's liability if B 'caused' A to subject another to a tort suggests that Congress did not intend § 1983 liability to attach where such causation was absent."). State officials are subject to suit in their personal capacity if "they play an affirmative part in the alleged deprivation of constitutional rights." King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987), overruled on other grounds by Lacey v. Maricopa Cty., 693 F.3d 896, 925 (9th Cir. 2012). "A plaintiff must allege facts, not simply conclusions, that show that an

individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

"The required causal connection between supervisor conduct and the deprivation of a constitutional right is established either by direct personal participation or by setting in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injury.'" Little v. Pena, No. C 94-0671 MHP, 1994 U.S. Dist. LEXIS 9068, at *9 (N.D. Cal. June 29, 1994) (quoting Bergquist v. Cty. of Cochise, 806 F.2d 1364, 1370 (9th Cir. 1986)); see K'Napp v. Adams, CASE NO. 1:06-cv-01701-LJO-GSA (PC), 2009 U.S. Dist. LEXIS 38682, at *9 (E.D. Cal. May 7, 2009).

The Ninth Circuit's ruling on Rogers's appeal sets the stage for reviewing the Third Amended Complaint. In the Second Amended Complaint, Rogers alleged that Giurbino instructed Uribe "to implement a 3% & 5% Staff Reduction Plan" and that Uribe implemented this plan. (Second Am. Compl. 3, ECF No. 8.) Beyond stating that these actions of Giurbino and Uribe violated RLUIPA and the First Amendment, (id. at 4), Plaintiff did not describe individual actions of these two Defendants. In her order dismissing Defendants Giurbino and Uribe, Judge Gonzalez found these allegations insufficient to state a claim, noting that "Plaintiff describes no further factual connection between staff reductions and the three specific lockdowns during which his ability to participate in congregational worship was thwarted." (Order re: Mot. Dismiss Second Am. Compl. 16, ECF No. 33.)

Addressing Judge Gonzalez's order dismissing the claims against Giurbino and Uribe in their individual capacities, the Ninth Circuit held as follows:

//

//

//

//

//

> We vacate the district court's dismissal of Defendant G.J. Giurbino and Defendant Domingo Uribe, Jr. in their individual capacities. Rogers's allegations of causation as to these two defendants are insufficient in light of Iqbal, 556 U.S. at 677-78. However, the record demonstrates that Rogers may be able to correct these deficiencies in an amended complaint. See Kuzil-Ruan's Declaration, filed on November 13, 2012. On remand, Rogers may request leave to amend his complaint regarding Giurbino and Uribe.

(Rogers v. Giurbino, No. 13-55527, order at 7 (9th Cir. Sept. 23, 2015), ECF No. 112.)

Taken as a whole, the allegations against Defendants Giurbino and Uribe in the Third Amended Complaint cure the deficiencies addressed by Judge Gonzalez as to Uribe, but not as to Giurbino. In the Third Amended Complaint, Rogers indicates that Giurbino "personally initiated the 3% and 5% Salary Savings in which result into [sic] the 3% to 5% Staff Redirection Plan." (Third Am. Compl. 3-4, ECF No. 128 (citing id. Ex. A, at 8).) Plaintiff states that "Centinela State Prison's Warden, Uribe personally accepted Giurbino's 3% to 5% Staff Redirection Plan." (Id. at 4 (citing id. Ex. B, at 9).) These are essentially the same allegations as in his Second Amended Complaint, and by themselves they would be insufficient to state a claim against Giurbino and Uribe in their individual capacities.

Yet, Rogers goes further in his Third Amended Complaint. Plaintiff argues that both Giurbino and Uribe "were aware that Rogers' RLUIPA rights were violated." (Id. (citing Def. Kuzil-Ruan Mot. Summ. J. Attach. #5 Decl. Kuzil-Ruan 4, ECF No. 74).) He personally informed Defendants Giurbino and Uribe about the violations of his rights on the dates of the three lockdowns, (id.), and states that "[b]oth individual Defendants, Giurbino & Uribe chose not to correct their subordinates while allegedly supporting their unjustified 3% to 5% Staff Redirection Plan[,]" (id. at 5).

Additional allegations tie the conduct of Defendant Uribe to the three specific lockdowns that Plaintiff argues violated his rights. Rogers asserts that he directly informed this Defendant that his rights were being violated, but Uribe chose to do nothing. (Id. at 4-5.) This is sufficient to show that Uribe, as warden of the prison,

"omit[ted] to perform an act which he [was] legally required to do that cause[d] the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d at 743 (citing Sims, 537 F.2d 829); cf. Andrade v. Cty. of San Diego, Case No.: 3:14-cv-01330-GPC-BGS, 2016 WL 737445, at *5 (S.D. Cal. Feb. 25, 2016) ("The SAC fails to identify any acts showing Defendant Barletta knew of, and thereafter affirmatively disregarded, an excessive risk to Andrade's health or safety."). As a result, the motion to dismiss the claims against Uribe in his individual capacity should be **DENIED**.

Plaintiff, however, has not alleged plausible personal involvement by Defendant Giurbino that withstands the requirements of Iqbal and the Ninth Circuit's analysis of his Second Amended Complaint. Although Rogers asserts that he personally informed Giurbino that his rights were being violated and that this Defendant chose to do nothing, (Third Am. Compl. 4-5, ECF No. 128), he admits that Giurbino was acting as the Director of the Division of Adult Operation for California's prison system at the time, (id. at 2). Without further facts from Rogers regarding how he informed this Defendant of the violations of his rights, given the scope of Giurbino's role, the Court finds it implausible that Plaintiff personally informed the Defendant about the effect of the lockdowns on Rogers's constitutional rights. Even the most liberal construction of his allegations does not allow this Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see Ramirez v. Giurbino, No. 10cv1292–WQH (MDD), 2011 WL 2669484, at *6 (S.D. Cal. May 24, 2011) (citation omitted) ("Plaintiff's assertion that Giurbino was 'responsible' for his placement in SHU does not allege specific facts of Giurbino's personal involvement, and is likewise deficient under Iqbal."), report and recommendation adopted, No. 10cv1292–WQH–MDD, 2011 WL 2669284 (S.D. Cal. July 7, 2011).

Accordingly, the motion to dismiss the claims against Defendant Giurbino in his individual capacity should be **GRANTED**. Courts must give a plaintiff leave to amend a pleading unless he could not possibly cure the claim by asserting other facts. Lopez, 203 F.3d at 1127. A plaintiff should not be granted the opportunity to amend when doing so

would be futile. Gardner v. Martino, 563 F.3d 981, 990 (9th Cir. 2009). Because Rogers has already been given the opportunity to amend his claim against Giurbino in his individual capacity, he should not be given further leave to amend his claim against this Defendant.

**2. Giurbino, Uribe, and Kuzil-Ruan's immunity from monetary damages in their official capacities under the Eleventh Amendment**

In their motion to dismiss, Defendants Giurbino and Uribe contend that they "are immune to suit for monetary damages in their official capacities under the Eleventh Amendment." (Defs. Giurbino & Uribe's Mot. Dismiss 13, ECF No. 129.) The Defendants argue that a state cannot be sued for damages in federal court because the Eleventh Amendment creates a jurisdictional bar. (Id. (citations omitted).) They assert that "[w]here a suit requests that the federal court order a state officer to pay funds from the state treasury for his wrongful acts, the Eleventh Amendment bars the suit because the State is the real party in interest." (Id. (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974).) Claims by inmates against prison officials in their official capacities are likewise barred. (Id. at 14 (citing Leer, 844 F.2d at 631-662).) Consequently, "because this Court lacks jurisdiction to entertain a claim for monetary damages against a state official in his or her official capacity, Plaintiff's claims against Defendants in their official capacities must be dismissed or stricken." (Id.)

Kuzil-Ruan similarly contends that "monetary damages are not available under a RLUIPA claim brought against a government official in his or her official capacity, as permitting monetary damages would effectively abrogate the State of California's sovereign immunity granted by the Eleventh Amendment." (Def. Kuzil-Ruan Mot. Dismiss Attach. #1. Mem. P. & A. 9, ECF No. 131 (citing Holley v. Cal. Dep't of Corr., 599 F.3d 1108, 1114 (9th Cir. 2010).) As a result, she argues that Plaintiff's claim for monetary damages under RLUIPA should be dismissed, noting that "the only claim that plaintiff could conceivably bring against Kuzil under RLUIPA would be for injunctive relief in her official capacity." (Id. at 10.) Defendant Kuzil-Ruan similarly asserts that

Rogers's First Amendment claim for damages from her in her official capacity is barred by the Eleventh Amendment. (Id. at 11.) "[A] judgment against Kuzil in her official capacity would be tantamount to a judgment against the State of California, which is immune from suit in federal court for money damages under the Eleventh Amendment." (Id. (citing P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, 506 U.S. 139, 145-46 (1993).)

In his opposition, Plaintiff maintains that his First Amendment claims against the Defendants in both their individual and official capacities are not barred by the Eleventh Amendment. (Opp'n Defs.['s] [Mots.] Dismiss 6, ECF No. 140.)[2] Rogers contends that these claims are not barred "because Defendants['] rolling lockdowns and three separate ten day lockdowns failed to meet the [Turner v. Safley, 482 U.S. 78 (1987)] test." (Id.) Plaintiff does not address immunity under the Eleventh Amendment, but he states that Defendants have not met their burden of showing that the lockdowns were not wanton. (Id. at 6-7.)

Giurbino and Uribe counter that "Plaintiff's arguments are misplaced because Eleventh Amendment Immunity is not related to whether Plaintiff substantively has a claim under the First Amendment." (Defs. Giurbino & Uribe's Reply Pl.'s Opp'n Mot. Dismiss 3, ECF No. 132.) They reiterate that the claims against them in their official capacities for monetary damages are barred under the Eleventh Amendment, (id. (citations omitted)), and conclude that "[r]egardless of whether the lockdowns satisfy the four-factor Turner test, the Court lacks jurisdiction to entertain a claim for monetary damages against a state official in his or her official capacity[,]" (id.)

The Eleventh Amendment grants the states immunity from private civil suits. U.S. Const. amend. XI; Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036,

---

[2] Because Defendants only argue that the official capacity claims for damages are barred under the Eleventh Amendment, the Court does not address whether the individual capacity claims are likewise barred.

1040 (9th Cir. 2003). It also provides immunity for state officials sued in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). "As such, it is no different from a suit against the State itself." Id. (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Monell, 436 U.S. at 690 n.55). "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." Antoine v. Byers & Anderson, 508 U.S. 429, 432 (1993) (footnote omitted).

Rogers sues Defendants Giurbino, Uribe, and Kuzil-Ruan in their individual and official capacities, and he seeks monetary damages. (Third Am. Compl. 2, 7, ECF No. 128.) A claim for damages is properly alleged against the Defendants in their individual capacities. See Graham, 473 U.S. at 166. But claims against them in their official capacities are claims against the State of California, which is absolutely immune from liability for damages. See Will, 491 U.S. at 71. Accordingly, Plaintiff's claims for damages against all three Defendants in their official capacities should be **DISMISSED** without leave to amend.

**3. Rogers's individual capacity RLUIPA claims against Giurbino, Uribe, and Kuzil-Ruan**

In their motion to dismiss, Giurbino and Uribe contend that Plaintiff's RLUIPA claim is barred because monetary damages are not available under RLUIPA. (Defs. Giurbino & Uribe's Mot. Dismiss 14, ECF No. 129.) They explain that "the Ninth Circuit recently ruled that damages are not available against prison officials in their individual capacities, as RLUIPA was enacted under the Spending Clause, and individual defendants are not recipients of federal funds." (Id. (citing Wood v. Yordy, 753 F.3d 899 (9th Cir. 2014).) Consequently, Rogers may only seek injunctive relief under RLUIPA. (Id.) In her motion to dismiss, Kuzil-Ruan similarly asserts that a government official cannot be held liable under RLUIPA in his or her individual capacity. (Def. Kuzil-Ruan

Mot. Dismiss Attach. #1. Mem. P. & A. 9, ECF No. 131 (citing Wood, 753 F.3d at 904).) As a result, "[P]laintiff's RLUIPA claim against Kuzil in her individual capacity must be dismissed." (Id.) Rogers does not address these arguments in his opposition. (See Opp'n Defs.['s] [Mots.] Dismiss 1-8, ECF No. 140.)

Damages against a prison official in his or her individual capacity are not available under RLUIPA. Wood, 753 F.3d at 901 ("The issue of first impression in this circuit is whether [the plaintiff] may seek damages against prison officials in their individual capacities [under RLUIPA]. We agree with the unanimous conclusion of all of the other circuits that have addressed the issue that such a claim may not be maintained."). "[T]here is nothing in the language or structure of RLUIPA to suggest that Congress contemplated liability of government employees in an individual capacity. The statute is aimed at burdens on religious exercise by a 'government.'" Id. at 904. Consequently, "[t]he statute does not authorize suits against a person in anything other than an official or governmental capacity . . . ." Id. A plaintiff "may not recover damages for claims under RLUIPA against any defendant in either an official or individual capacity, and may only seek equitable relief against a defendant in his official capacity." Gray v. Lewis, Case No. 13–cv–04929–SI, 2015 WL 3957865, at *4 (N.D. Cal. June 29, 2015).

Here, Plaintiff attempts to sue Defendants Giurbino, Uribe, and Kuzil-Ruan in their individual and official capacities under RLUIPA. (See Third Am. Compl. 2, ECF No. 128.) He seeks injunctive relief and damages. (Id. at 7.) But under RLUIPA, Rogers may only seek injunctive relief against the three Defendants in their official capacities. See Gray, 2015 WL 3957865, at *4. As a result, Plaintiff's RLUIPA claims against Defendants Giurbino, Uribe, and Kuzil-Ruan in their individual capacities should be **DISMISSED** without leave to amend. Rogers may only proceed with his claims for injunctive relief against the Defendants in their official capacities under this statute.

//

//

//

**4. Plaintiff's claims for injunctive relief under RLUIPA against Giurbino, Uribe, and Kuzil-Ruan**

Defendants Giurbino and Uribe assert that Rogers's request for injunctive relief under RLUIPA is moot. (Defs. Giurbino & Uribe's Mot. Dismiss 15, ECF No. 129.) They point out that while "Plaintiff requests an end to all rolling lockdowns that deal with any budget cuts and that effect religious rights[,]" those lockdowns ended half a decade ago. (Id. (citing Third Am. Compl. 7, ECF No. 128).) "Plaintiff does not allege that he has experienced any rolling lockdowns in the past five years. Therefore, now that the rolling lockdowns have stopped, Plaintiff cannot meet the standard for injunctive relief because he cannot show that he will suffer irreparable injury if his injunctive request is not granted." (Id.)

In her motion to dismiss, Defendant Kuzil-Ruan also opines that Rogers's claim for injunctive relief against her in her official capacity should be denied as moot. (Def. Kuzil-Ruan Mot. Dismiss Attach. #1. Mem. P. & A. 10, ECF No. 131.) She argues that Plaintiff does not attribute any of the lockdowns to her. (Id.) "But even assuming that plaintiff does seek some form of injunctive relief from Kuzil, an actual controversy no longer exists at this stage in the litigation." (Id.) Kuzil-Ruan retired from the California Department of Corrections and Rehabilitation ("CDCR") in October of 2015, and she indicates that even when she was employed at Centinela, she never had authority to implement the type of state-wide injunction that Rogers seeks. (Id. at 10-11 (citing id. Attach. #2 Decl. Kuzil-Ruan 1-2).) She also asserts that "to the extent to which plaintiff seeks injunctive relief from officials at Centinela, he concedes in the [Third Amended Complaint] that he is no longer housed at that institution." (Id. at 11.) And absent an exception, the transfer of an inmate to a different facility generally moots a claim for injunctive relief. (Id. (citing Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).) She maintains that no exception applies in this case. (Id.)

Rogers responds that his RLUIPA claim is not moot due to the fact that "he named each Defendant . . . in their official capacities." (Opp'n Defs.['s] [Mots.] Dismiss 5, ECF

No. 140 (citation omitted).) He argues that the Defendants' successors should be substituted for them. (Id. (citations omitted).) Plaintiff maintains that "[i]t was necessary for Rogers to file his [Third Amended Complaint] against Defendants to stop CDCR from implementation of any more rolling lockdowns as Rogers is currently imprisoned." (Id.) Rogers argues that the voluntary cessation exception to the mootness doctrine should apply to his RLUIPA claims. (Id. at 5-6 (citations omitted).) He concludes that "Defendants['] successors have yet to guarantee the absence of any more rolling lockdowns as Defendants continue to hold to their affirmative defense." (Id. at 6.)

In their reply, Defendants Giurbino and Uribe contend that the alleged wrongful conduct is not capable of repetition yet evading review. (Defs. Giurbino & Uribe's Reply Pl.'s Opp'n Mot. Dismiss 4, ECF No. 132.)

> [T]here is no reasonable expectation that Plaintiff will experience a rolling lockdown based on the Staff Redirection Plan again. There are no allegations that there have been any lockdowns anywhere across the state in the past five years, much less where Plaintiff is currently housed at California Men's Colony.
>
> Second, the type of injury that Plaintiff is complaining about is not the type "limited in duration that it is always likely to become moot before federal court litigation is completed." Plaintiff's alleged injury stems out of a policy that, according to Plaintiff's allegations, would continue indefinitely. Moreover, according to Plaintiff's allegations, these rolling lockdowns are not for short periods, but rather lasted for over a year (March 2010 through June 30, 2011). However, since Plaintiff filed his original complaint in March 2011, Plaintiff has not alleged that the rolling lockdown policy extended beyond this one time period.

(Id.) As a result, they conclude that Rogers has not met the criteria for this exception to the mootness doctrine. (Id. at 5.)

Defendant Uribe also asserts that substituting his successor would not revive Plaintiff's claim. (Id.) "Plaintiff is currently housed at California Men's Colony and there is no indication that he is returning to Centinela State Prison." (Id.) Consequently, substitution of Uribe's successor "would not affect this case because these successors at

Centinela could not provide the relief sought by Plaintiff, housed at another institution." (Id. (citing Woods v. Carey, No. CIVS041225LKKGGHP, 2006 WL 548190, at *5 (E.D. Cal. Mar. 6, 2006).)

Article III, section 2 of the United States Constitution provides federal courts with jurisdiction over an actual case or controversy. U.S. Const. art. III, § 2. This case or controversy requirement exists throughout all stages of federal judicial proceedings, trial and appellate. Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990)). Accordingly, parties must continue to have a personal stake in the outcome of the lawsuit. Lewis, 494 U.S. at 477-78 (quoting Los Angeles v. Lyons, 461 U.S. 95, 101 (1983)); see also Preiser v. Newkirk, 422 U.S. 395, 401 (1975). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) (quoting Spencer, 523 U.S. at 7; Lewis, 494 U.S. at 477). If a party is unable to maintain a personal outcome in the lawsuit, the claim becomes moot. Spencer, 523 U.S. at 7-8.

According to the allegations in the Third Amended Complaint, the lockdowns that form the basis of Rogers's RLUIPA claims took place from 2010-2011 at Centinela. (Third Am. Compl. 4-5, ECF No. 128.) Plaintiff has not alleged any lockdowns since 2011, and he is no longer incarcerated at Centinela. (See id. at 1.) Without an exception to the mootness doctrine, Rogers's claims for injunctive relief under RLUIPA cannot survive. See Dilley, 64 F.3d at 1368 ("The defendants argue that this case is moot. We agree. Since the district court granted injunctive relief in this case, Dilley has been transferred from Calipatria to another California state prison."). Although the parties address different exceptions to the mootness doctrine in their briefing, the Court finds that neither exception applies.

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged

conduct as soon as the case is dismissed." Knox v. Serv. Employees Int'l Union, Local 1000, 567 U.S. ___, ___, 132 S. Ct. 2277, 2287 (2012) (citing City of Mesquite v. Aladdin's Castle, 455 U.S. 283, 289 (1982)). "But voluntary cessation can yield mootness if a 'stringent' standard is met: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Rosebrock v. Mathis, 745 F.3d 963, 971 (9th Cir. 2014) (quoting Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), 528 U.S. 167, 189 (2000)). Here, five years have passed since the last lockdown at Centinela. (See Third Am. Compl. 4, ECF No. 128.) Additionally, Rogers is now incarcerated at California Men's Colony. (Id. at 1.) The time that has passed and Plaintiff's transfer to another institution make it absolutely clear that the violation of his religious and constitutional rights while at Centinela is not reasonably expected to happen again. See Rosebrock, 745 F.3d at 971. This exception does not apply.

The "capable of repetition, yet evading review" exception to the mootness doctrine is applicable "where two elements combin[e]: (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam); see also Davis v. Fed. Election Comm'n, 554 U.S. 724, 735 (2008). Here, even if the challenged lockdowns were too short in duration to be fully litigated before cessation, given Plaintiff's transfer to California Men's Colony, he cannot reasonably expect that he will be subject to lockdowns by Giurbino, Uribe, Kuzil-Ruan, or their successors again. This exception to the mootness doctrine is equally inapplicable.

In sum, Rogers's claims for injunctive relief under RLUIPA against Giurbino, Uribe, and Kuzil-Ruan are moot. As a result, these claims should be **DISMISSED**. Because it is not clear whether Plaintiff could amend his pleading to include facts sufficient to show that the claims are not moot, he should be given leave to amend them. See Lopez, 203 F.3d at 1127.

**5. Qualified immunity**

Last, Defendants Giurbino and Uribe argue that they are entitled to qualified immunity. (Defs. Giurbino & Uribe's Mot. Dismiss 15, ECF No. 129.) They explain that "[a] reasonable state-level CDCR official in Defendant Giurbino's position would not have reason to believe that he could be held constitutionally liable for implementing the 3-5% Staff Redirection Plan in light of the state budget crisis." (Id.) Defendants contend that a reasonable prison warden in Uribe's position would not have reason to believe that constitutional liability could exist for complying with statewide orders for 3-5% staff redirections. (Id.) They assert that "they have not violated the constitution, nor would they have been on notice that their actions were in violation of the First Amendment right to free exercise or RLUIPA[,]" (id. at 17), and they give four reasons why this is the case, (see id. at 17-19).

The two Defendants first argue that the only allegation in the Third Amended Complaint linking them to the alleged constitutional violations is the Staff Redirection Plan. (Id. at 17.) Moreover, "there is no case law holding that redirecting/reducing staff in light of a budget crisis is unconstitutional." (Id.) Second, even if they were responsible for the lockdowns, it would not be clear that their implementation because of staff shortages and budget shortfalls would violate the rights of inmates. (Id.) Giurbino and Uribe maintain that "[w]hile there may be case law about lockdowns generally, most of which provide deference to prison administrators, there is no clearly established law in this circuit or any other circuit specifically regarding modifying programming based on a rolling lockdown schedule." (Id. at 17-18 (citing Norwood v. Vance, 572 F.3d 626 (9th Cir. 2009).)

Third, Defendant Uribe contends that the primary allegation against him is that he was following the Staff Redirection Plan, which was ordered by Giurbino. (Id. at 18.) Uribe states that he would have no reason to believe that this plan would be unconstitutional, as "the courts have held that government employees are ordinarily entitled to rely on the assumption that regulations are drafted in compliance with

constitutional standards . . . ." (Id. (citing Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994).)

Finally, addressing the three specific lockdowns that Plaintiff complains of, both Giurbino and Uribe argue that to the extent they are connected to those lockdowns, they are entitled to qualified immunity for those incidents as well. (Id.) They contend that "[t]he main case law that pertains to security lockdowns indicate that prison administrators generally have broad discretion in determining whether to impose lockdowns to control institutional disturbances." (Id. (citing Norwood, 572 F.3d 626).) The Defendants maintain that no reasonable CDCR official would believe that constitutional liability could exist for failing to prevent the three lockdowns that "were directly related to missing items that could be used as weapons." (Id.) They conclude that "because there was no clearly established law regarding periodic rolling lockdowns and modification of programming during a state budget crisis, Defendants are entitled to qualified immunity." (Id. at 19.)

Defendant Kuzil-Ruan similarly argues that she is entitled to qualified immunity on Rogers's First Amendment individual capacity claim. (Def. Kuzil-Ruan Mot. Dismiss Attach. #1. Mem. P. & A. 12, ECF No. 131.) She contends that "[w]hen viewed in the requisite case-specific context, it cannot be said that defendant's actions were clearly [unconstitutional] under the circumstances of this case." (Id. at 13.) Addressing the March 2010 lockdown, she asserts that the Ninth Circuit "has not clearly established whether restricting access to religious services during a temporary lockdown instituted due to security concerns violates an inmate's First Amendment rights." (Id. at 13-14.) Rather, this Defendant cites several cases for the proposition that security-related lockdowns affecting First Amendment religious rights are constitutional. (Id. at 14-15 (citations omitted).) Kuzil-Ruan argues that in relying on this case law, she "could have reasonably believed that it was lawful to institute a similar lockdown restricting access to religious services while searches were conducted to locate the missing scissors, which could obviously be used as a weapon." (Id. at 15.)

Addressing the rolling lockdowns, this Defendant notes that it does not appear from the Third Amended Complaint that Plaintiff is pursuing his First Amendment claim against her for the implementation of those lockdowns. (Id. at 15-16.) But "to the extent to which plaintiff does intend to pursue his First Amendment claim against Kuzil as to the rolling lockdowns, Kuzil hereby joins in the Motion to Dismiss filed by defendants Giurbino and Uribe as to that issue." (Id. at 16.)

Rogers responds that he has stated claims for First Amendment liability against Giurbino, Uribe, and Kuzil-Ruan. (Opp'n Defs.['s] [Mots.] Dismiss 7, ECF No. 140.) He argues that the conduct at issue is "15 months of rolling lockdowns not simply 'staff reduction' or [']modifying programming.'" (Id. at 8.)

> The law is clearly established that prison officials cannot use unsubstantiated security concerns to justify systematically denying inmates access to group worship based on blanket security concerns . . . nor may they create a situation in which they force themselves to violate civil rights, using financial concerns to justify constitutional violations.

(Id. (citations omitted).) As a result, Plaintiff concludes that Defendants should not be granted qualified immunity. (Id.)

In their reply, Defendants Giurbino and Uribe contend that the cases cited by Rogers in his opposition do not directly relate to the facts of his case. (Defs. Giurbino & Uribe's Reply Pl.'s Opp'n Mot. Dismiss 6, ECF No. 132.) They note that in those cases, the inmates were permanently or routinely denied access to religious services, which is different from the periodic rolling lockdowns Rogers complains of. (Id. at 6-7.) Consequently, "[t]he fact that the Ninth Circuit held that jails could not place an outright ban on religious services to inmates in a higher-level of secured housing would not put Defendants in this case on notice that rolling lockdowns would be unconstitutional." (Id. at 7.) As a result, "Defendants are entitled to qualified immunity because there was no clearly established law regarding periodic rolling lockdowns and modification of programming during a state budget crisis." (Id.)

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. ___, ___, 132 S. Ct. 2088, 2093 (2012) (citation omitted). When considering a claim for qualified immunity, courts engage in a two-part inquiry: Do the facts show that the defendant violated a constitutional right, and was the right clearly established at the time of the defendant's purported misconduct? See Pearson v. Callahan, 555 U.S. 223, 232 (2009). A right is clearly established if its contours are so clear that a reasonable official would understand that his conduct was unlawful in the situation he confronted. Dunn v. Castro, 621 F.3d 1196, 1199-1200 (9th Cir. 2010). This standard ensures that government officials are on notice of the illegality of their conduct before they are subjected to suit. Hope v. Pelzer, 536 U.S. 730, 739 (2002). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ." Id. (citations omitted).

"[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Pearson, 555 U.S. at 236). "An official is entitled to summary judgment on the ground of qualified immunity where his or her 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" James v. Rowlands, 606 F.3d 646, 650 (9th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Courts should attempt to resolve this threshold immunity question at the earliest possible stage in the litigation "before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" Ashcroft, 563 U.S. at 735 (quoting Pearson, 555 U.S. at 236-37). "If no constitutional violation is shown, the inquiry ends." Cunningham v. City of Wenatchee, 345 F.3d 802, 810 (9th Cir. 2003) (citation omitted).

Qualified immunity protects an officer who makes a decision that, even if constitutionally deficient, is based on a reasonable misapprehension of the law governing the circumstances he confronted. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); see also Saucier v. Katz, 533 U.S. 194, 206 (2001) ("Qualified immunity operates . . . to protect officers from the sometimes 'hazy border between excessive and acceptable force,' . . . ." (quoting Priester v. Riviera Beach, 208 F.3d 919, 926-27 (11th Cir. 2000))), abrogated in part on other grounds by Pearson, 555 U.S. at 236. The inquiry is whether the officer knew his conduct was unlawful, and "reasonableness is judged against the backdrop of the law at the time of the conduct." Brosseau, 543 U.S. at 198. If at the time, the law did not clearly establish that the conduct violated the Constitution, the officer should not be subject to liability. Id. "The plaintiff bears the initial burden of proving that the right was clearly established." Sweaney v. Ada Cty., Idaho, 119 F.3d 1385, 1388 (9th Cir. 1997) (citation omitted).

"[Q]ualified immunity covers only defendants in their individual capacities . . . ." Cmty. House v. City of Boise, Idaho, 623 F.3d 945, 966 (9th Cir. 2010); see also Hallstrom v. City of Garden City, 991 F.2d 1473, 1482 (9th Cir. 1993) (citations omitted) (noting that employees sued in their official capacities may not assert the defense of qualified immunity). As a result, because RLUIPA claims can only be maintained against government employees in their official capacities, Wood, 753 F.3d at 904, the defense of qualified immunity can only apply, if at all, to Plaintiff's First Amendment claims against the Defendants in their individual capacities, see Gard v. Dooley, 4:14-CV-04183-LLP, 2016 WL 814842, at *1 (D.S.D. Feb. 29, 2016) (citations omitted) ("[S]ince RLUIPA does not encompass claims against officials who are sued in their individual capacities, qualified immunity does not apply to RLUIPA claims.").[3]

[3] Although the Court has concluded that the individual capacity claim against Giurbino should be dismissed, the Court still addresses whether he would nevertheless be entitled to qualified immunity on this claim.

The three Defendants argue that they are entitled to qualified immunity on the claims based upon the Staff Redirection Plan that prompted the rolling lockdowns and the three security-related lockdowns that occurred between May 18-28, June 12-22, and August 17-24, 2010. The Court addresses these incidents separately.

**a. The Staff Redirection Plan**

The effects and constitutionality of this Staff Redirection Plan were considered in Haynes, 2015 U.S. Dist. LEXIS 30673. There, the court addressed modified programs that had been instituted following instances of mass violence. Id. at *5-9. The Redirection Plan and modified programs affected the availability of prayer services. Judge Tigar wrote, "[T]o the extent that Friday Jumu'ah prayer services were unavailable due to either the Redirection Plan or modified programs, this restriction was reasonably related to the legitimate penological goal of inmate and staff safety." Id. at *26. He concluded, "To the extent that Friday Jumu'ah prayer services were cancelled due to modified programs or the Redirection Plan, the Court finds that Defendants did not violate Plaintiff's right to free exercise." Id. at *28.

As it relates to Rogers's litigation, Haynes suggests that there is no clearly established law that prisoners have a right to attend religious services regardless of the budgetary concerns of the prison. Consequently, this case is persuasive that all three Defendants should be entitled to qualified immunity on Plaintiff's First Amendment claims relating to the rolling lockdowns. But even though the reasoning in Haynes is persuasive, the Court nevertheless addresses the parties' arguments regarding qualified immunity.

At the outset, Rogers does not appear to allege that Defendant Kuzil-Ruan participated in the decision to implement the Staff Redirection Plan that caused the rolling lockdowns. (See Third Am. Compl. 3-4, ECF No. 128.) As a result, the facts do not show that she violated Plaintiff's constitutional rights through a Staff Redirection Plan adopted and implemented by others. Rogers's allegations against her are insufficient to meet the first part of the two-part inquiry into qualified immunity. See

Pearson, 555 U.S. at 232. Accordingly, Kuzil-Ruan's motion to dismiss the Third Amended Complaint on the basis that she is entitled to qualified immunity for an alleged violation of the Plaintiff's constitutional rights resulting from lockdowns under the Staff Redirection Plan should be **GRANTED**.

Addressing whether Defendant Uribe is entitled to qualified immunity, the Court finds guidance in Grossman, 33 F.3d 1200. There, while concluding that a city ordinance violated the First Amendment, the Ninth Circuit simultaneously affirmed summary judgment in favor of the police officer who arrested the Plaintiff for violation of the ordinance because the officer was entitled to qualified immunity. Grossman, 33 F.3d at 1207-08, 1210.

> [W]hen a city council has duly enacted an ordinance, police officers on the street are ordinarily entitled to rely on the assumption that the council members have considered the views of legal counsel and concluded that the ordinance is a valid and constitutional exercise of authority. Courts have accordingly held that the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional.

Id. at 1209 (footnote omitted) (citations omitted). But the appellate court cautioned that "[w]here a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity." Id. Similarly, an officer who enforces an ordinance in an egregious manner or in a manner that a reasonable officer would recognize as beyond the scope of the ordinance does not receive the benefit of qualified immunity, even if there is no case law indicating that the ordinance or the officer's conduct is unconstitutional. Id. at 1210 (citing Chew v. Gates, 27 F.3d 1432, 1449-50 (9th Cir. 1994).)

This doctrine applies equally where the challenged policy is not a city ordinance but a Staff Redirection Plan implemented by the Director of the Division of Adult Operation for California's prison system. Warden Uribe was entitled to rely on Director Giurbino's judgment that this plan was constitutional. See Grossman, 33 F.3d at 1209.

Moreover, the Staff Redirection Plan does not appear to be "patently violative of fundamental constitutional principles," id., nor was Uribe's conduct in enforcing the plan egregious, see id. at 1210 (citing Chew, 27 F.3d at 1449-50.) As a result, Uribe is entitled to qualified immunity for any First Amendment violation resulting in the rolling lockdowns under the Staff Redirection Plan, and his motion to dismiss the Third Amended Complaint on this basis should be **GRANTED**.

Last, addressing whether Giurbino is entitled to qualified immunity, it is Plaintiff's burden to show the existence of a clearly established right. See Sweaney, 119 F.3d at 1388 (citation omitted). In his opposition, Rogers cites Memorial Hospital v. Maricopa County, 415 U.S. 250 (1974), for the proposition that prison officials may not "create a situation in which they force themselves to violate civil rights, using financial concerns to justify constitutional violations." (Opp'n Defs.['s] [Mots.] Dismiss 8, ECF No. 140 (citing Mem'l Hosp., 415 U.S. 250).) Yet, this case did not address the First Amendment or even prisoners. As a result, it is not persuasive.

At the same time, other courts have recognized that budget constraints can be a basis for finding qualified immunity for constitutional violations alleged by inmates. See Birrell v. Brown, 867 F.2d 956, 958 (6th Cir. 1989) (citing Youngberg v. Romeo, 457 U.S. 307, 323 (1982)). In Birrell, the director of the state prison system was entitled to qualified immunity for overcrowding and understaffing that were the result of budgetary limitations. See id. at 958-59. Along these lines, some courts have concluded, contrary to Plaintiff's assertions, that "'[t]he law is clear that there is no absolute right to being able to attend group religious services; legitimate penological interests can take precedence over such a right.'" Walker v. Dart, No. 09 C 1752, 2010 WL 3307079, at *10 (N.D. Ill. Aug. 19, 2010) (citations omitted) (quoting Buck v. Lake Cty. Sheriff, No. 03 C 1740, 2004 WL 2983966, *8 (N.D. Ill. Dec. 3, 2004)). This mix of cases demonstrates that Rogers cannot show a clearly established right to attend religious services regardless of the financial constraints on the prison system. As a result, Giurbino's motion to dismiss on the basis that he is entitled to qualified immunity for

alleged constitutional violations resulting from the rolling lockdowns that followed the implementation of the Staff Redirection Plan should be **GRANTED**. The same rationale is a separate basis for also finding that Kuzil-Ruan and Uribe are entitled to qualified immunity on Rogers's First Amendment claims.

**b. The three lockdowns between May and August 2010**

Rogers complains of three distinct lockdowns: (1) May 18-28, 2010 (lost scissors); (2) June 12-22, 2010 (lost ammunition); and (3) August 17-24, 2010 (missing dental tool). (See Third Am. Compl. 5, ECF No. 128.) The Defendants assert that the three lockdowns were related to security concerns. (See Defs. Giurbino & Uribe's Mot. Dismiss 18-19, ECF No. 129; Def. Kuzil-Ruan Mot. Dismiss Attach. #1 Mem. P. & A. 13-15, ECF No. 131.)

Plaintiff cites Greene v. Solano County Jail, 513 F.3d 982 (9th Cir. 2008), and Pierce v. County of Orange, 526 F.3d 1190 (9th Cir. 2008), for the proposition that "[t]he law is clearly established that prison officials cannot use unsubstantiated security concerns to justify systematically denying inmates access to group worship based on blanket security concerns . . . ." (Opp'n Defs.['s] [Mots.] Dismiss 8, ECF No. 140 (citing Greene, 513 F.3d 982; Pierce, 526 F.3d at 1208, 1210-11).) The Court finds both cases inapposite. In Greene, the focus was on the plaintiff's RLUIPA claim that he was completely banned from attending or facilitating any group religious services. 513 F.3d at 985. Similarly, in Pierce, the plaintiffs were pretrial detainees housed in administrative segregation who were routinely denied access to any religious services. 526 F.3d at 1210. Even there, the Ninth Circuit found no fault with an existing injunction that provided "for the curtailment or elimination of detainees' rights [to ongoing participation in religious activities] based on security concerns." Id. at 1211. The court faulted "the County's bare invocation of security concerns, when the County [had] failed to even establish that there is regular access to religious services . . . , much less that interruptions in such access are on account of security." Id. Still, the court suggested that if inmates were only "sporadically" denied access to religious services, the result may have been

different. See id. at 1208. By contrast, Rogers appears to have only periodically missed his religious services as a result of the three incidents. (See Third Am. Compl. 3-4, ECF No. 128.)

The Ninth Circuit has indicated that "'prison officials have a right and a duty to take the necessary steps to reestablish order in a prison when such order is lost.'" Johnson v. Lewis, 217 F.3d 726, 735 (9th Cir. 2000) (quoting Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir. 1982)); see also Mitchell v. Cate, No. 2:11–cv–1240 JAM AC P, 2015 WL 5255339, at *38 (E.D. Cal. Sept. 9, 2015) ("[T]he court has been unable to identify any case law that would have alerted a reasonable officer that the restrictions on group religious activities during the modified program [implemented as a result of a serious incident] violated plaintiff's First Amendment rights."). Mitchell involved the placement of the plaintiff in administrative segregation between October 6, 2009, and May 26, 2010. Mitchell, 2015 WL 5255339, at *1. This time period overlaps the three incidents identified by Rogers as occurring between May 18 and August 24, 2010. Like the defendants in Mitchell, in Rogers's case, a reasonable officer could have concluded that a seven-to-ten day prison lockdown would be constitutional after scissors, ammunition, and a dental tool respectively went missing. Accordingly, Defendants' motions to dismiss on the basis that they are entitled to qualified immunity on the three security-related lockdowns between May 18-28, June 12-22, and August 17-24, 2010, should be **GRANTED**.

All three Defendants are entitled to qualified immunity on Rogers's First Amendment claims against them in their individual capacities. As a result, these claims should be **DISMISSED** without leave to amend.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons discussed above, Defendants Giurbino and Uribe's motion to dismiss [ECF No. 129] should be **GRANTED in part and DENIED in part**, and Defendant Kuzil-Ruan's motion to dismiss [ECF No. 131] should be **GRANTED**.

//

Beginning with Defendant Girubino, the claim against him for damages under the First Amendment should be **DISMISSED** without leave to amend. Defendant Giurbino is also entitled to qualified immunity on this claim for damages and injunctive relief in his individual capacity, and it should be **DISMISSED** without leave to amend for this reason as well. Rogers's RLUIPA claim for damages against Giurbino should be **DISMISSED** without leave to amend. Plaintiff's claim for injunctive relief against this Defendant in his official capacity under the First Amendment should be **DISMISSED** as moot with leave to amend.[4] Rogers's claim against Giurbino in his official capacity for injunctive relief under RLUIPA should also be **DISMISSED** as moot with leave to amend.

Regarding Defendant Uribe, the motion to dismiss Plaintiff's claim for damages against this Defendant under the First Amendment should be **DENIED**. Defendant Uribe, however, is entitled to qualified immunity on this claim for damages and injunctive relief in his individual capacity, and for this reason it should be **DISMISSED** without leave to amend. Rogers's claim for damages against Uribe under RLUIPA should be **DISMISSED** without leave to amend. Plaintiff's claim for injunctive relief under the First Amendment against this Defendant in his official capacity should be **DISMISSED** as moot with leave to amend. Rogers's claim against Uribe in his official

//

---

[4] Although none of the Defendants moved to dismiss Plaintiff's claims for injunctive relief under the First Amendment, this Court is obligated to sua sponte review these causes of action to assess whether they state a basis for relief. See Alve v. Edwards, Civil No. 10–1389 DMS (POR), 2010 WL 4809339, at *1 (S.D. Cal. Nov. 19, 2010) ("The Court must sua sponte dismiss prisoner complaints, or any portions thereof, which are frivolous, malicious, or fail to state a claim upon which relief may be granted." (citing 28 U.S.C.A. § 1915A(b) (West 2006); Resnick v. Hayes, 213 F.3d 443, 446-47 (9th Cir. 2000))). Having done so, the Court finds that Rogers's claims for injunctive relief under the First Amendment against all three Defendants in their official capacities are moot for the same reasons that his RLUIPA claims for injunctive relief are moot. Plaintiff, however, should be given leave to amend these claims.

capacity for injunctive relief under RLUIPA should also be **DISMISSED** as moot with leave to amend.

Last, Defendant Kuzil-Ruan is entitled to qualified immunity on Plaintiff's First Amendment claim for damages and injunctive relief in her individual capacity, and this claim should be **DISMISSED** without leave to amend. Rogers's claim against Kuzil-Ruan for damages under RLUIPA should also be **DISMISSED** without leave to amend. Plaintiff's claim against this Defendant in her official capacity for injunctive relief under the First Amendment should be **DISMISSED** as moot with leave to amend. Rogers's claim against Kuzil-Ruan in her official capacity for injunctive relief under RLUIPA should also be **DISMISSED** as moot with leave to amend.

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before August 19, 2016. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before September 2, 2016.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991)

IT IS SO ORDERED.

DATED: July 22, 2016

Hon. Ruben B. Brooks
United States Magistrate Judge

cc: Judge Hayes
All Parties of Record